YOSHIE MIYASATO HOKAMA, etc., Plaintiff-Appellant, *vs*. RELINC CORPORATION, a Hawaii corporation, STEVEN T. NAKANO and HELEN SHIMAMURA, Defendants-Appellees

NO. 5824

JANUARY 21. 1977

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY RICHARDSON. C.J.

This is an appeal from a summary judgment rendered against Yoshie Miyasato Hokama, individually, and as custo-

dian for her children Wayson K. Hokama, Charlotte Y. Hokama and Bruce Y. Hokama. In an action in contract, the trial court found that the officers of Relinc Corporation, Steven T. Nakano and Helen N. Shimamura (appellees), could not be held personally liable on a contract they had executed.

We reverse. The trial court erred in the granting of summary judgment as to appellees, Nakano and Shimamura. The two issues raised by this appeal are:

1. Whether the trial court erred in failing to find that there were two questions of material fact to be determined, *i.e.*, (a) whether the appellees were parties to the contract and bound jointly with the corporation to repurchase appellant's stock and (b) whether appellant made sufficient demand on the appellees to repurchase the stock.

2. Whether the trial court erred as a matter of law in implicitly finding that a corporate officer, when executing a contract on behalf of a corporation with *descriptio personae*, cannot be held personally liable on the contract, even though there is an intention to impose personal liability.

The facts were that on November 3, 1969 Mrs. Hokama (appellant) purchased thirty thousand shares of Relinc Corporation (hereinafter Relinc) stock in three separate lots of ten thousand shares each at the purchase price of a dollar per share through a personal friend, Harold Nishimura, who was an agent of Relinc. To consummate this purchase, she signed a contract for each lot specifying the terms and conditions of her agreement with Relinc. This contract was in a standardized typed form prepared by Relinc.

Section 4 of the contract provides *inter alia:*

4. The Company, *its officers*, and/or its subsidiaries hereby agree to purchase from the Purchaser, all or any portion of the shares registered in the name of the Purchaser for a price of $1.50 per share, two (2) years from the date of this agreement. (Emphasis added).

The appellees' signatures appear on these contracts as follows:

RELINC CORPORATION

/s/ Steve T. Nakano
      Its President

/s/ Helen N. Shimamura
      Its Secretary

Consistent with the agreement in Section 4 of the contract, appellant allegedly made demand upon both Relinc and the appellees for performance. Relinc and appellees failed to repurchase the stock, which resulted in this controversy.

After her complaint was filed, appellant moved for summary judgment pursuant to HRCP, Rule 56 and attached affidavits of herself and Mr. Nishimura in support of her motion. Thereafter, appellees moved for summary judgment on the issue of their personal liability.

Upon hearing both motions, the trial court granted appellant's motion for summary judgment against Relinc, but not as to appellees. Conversely, the trial court granted appellees' motion for summary judgment and this appeal followed.

We disagree with the trial court's granting of summary judgment in favor of the appellees. In *Island Gentry Joint Venture v. Hawaii,* 57 Haw.    ,    P.2d    (1976) we said:

Under HRCP Rule 56(c) a summary judgment is sustained only if the record shows that there is no issue as to any material fact and that the moving party is entitled to judgment as a matter of law; inferences to be drawn from the underlying facts alleged in the materials considered by the court in making its determination must be viewed in the light most favorable to the party opposing the motion. *Id.* at    .

Here, the record shows that the evidence before the trial judge was inadequate to make a summary finding of both fact and law. Turning first to the error made by the trial judge concerning the questions of fact presented, we find that due to the meager evidence before us there simply are no inferences which can be drawn from the appellant's complaint, affidavits, and her deposition of Mr. Nishimura. *Cf. Gum v.*

*Nakamura,* 57 Haw. 39, 549 P.2d 471 (1976). All that is presented here are conflicting assertions regarding the meaning of the contract and whether a sufficient demand for repurchase of the stock was made.

We will first discuss the question of fact raised by the evidence on the meaning of paragraph 4 of the contract. The appellant's affidavit states that the contracts represented the "full purchase agreement between herself and Relinc Corporation and its officers." But this begs the question regarding the officers' personal liability rather than resolving it. The appellant's deposition of Mr. Nishimura is likewise silent as to the involvement of the officers in the buy-back agreement. It simply characterizes the agreement as one which "provided for the company to buy back the stocks" and states that "the agreement was that Relinc was to buy them back."

On the other hand, the appellees' affidavits do not explain why the officers were mentioned in paragraph 4 of the contract and merely conclusorily state that "the agreement was in no way meant to bind the officers personally."

Therefore, at this stage of the evidence submitted, we find that there is an unresolved material question of fact presented by the pleadings regarding the meaning of the contract.

The second question of material fact raised was whether sufficient demand to repurchase the stock was ever made by appellant. Appellant's affidavit states that she made demand on Harold Nishimura, the agent of Relinc Corporation. Mr. Nishimura's affidavit supports appellant's statement that demand was made to him and further states that "in turn he communicated" such demand "to Relinc Corporation and its officers." However, appellees' affidavits assert that appellant "did at no time tender" the stock certificates to the officers of the corporation, allegedly relieving them of their obligation to repurchase the stock.

At this point of the proceedings, we believe it is not clear whether this dispute over appellant's demand concerns what the parties did or whether it concerns the meaning of paragraphs 4 and 5 of the contract which provide in pertinent part:

4. The Company, its officers, . . . *hereby agree to purchase* from the Purchaser, all or any portion of the shares registered in the name of the Purchaser . . . *two years from the date of this agreement.* (Emphasis added).

5. The *Purchaser may at his option decide not to sell* on the date specified in this agreement. (Emphasis added).

It is arguable that the burden was on the corporation and officers to unconditionally repurchase the stock whether or not appellant made any demand. Therefore, we conclude that this raises a second material question of fact at this stage of the proceedings.

While we have found that the trial judge erred in finding no questions of material fact, we also find that this granting of summary judgment constituted a separate error of law. Upon reviewing the record on appeal, the briefs filed and the oral arguments before us, we conclude that the trial court must have granted summary judgment on an implicit finding, as a matter of law, that the contracts between appellant and appellees for Relinc were entirely unambiguous and that parol evidence was inadmissible to explain its meaning or vary its terms. *Gum, supra.* However, based on the language of paragraph 4 of the contracts before us, we hold that there is an ambiguity in the contracts which must be resolved as a question of law. Furthermore, we hold that parol evidence is admissible to explain the circumstances surrounding the execution of the contract to lend the trial judge insight into the meaning of the contract.

For as we have held in *Bishop Est. Trust v. Castle & Cooke,* 45 Haw. 409, 421, 368 P.2d 887 (1962):

In determining whether or not an ambiguity exists in a document, under the parol evidence rule, the test lies not necessarily in the presence of particular ambiguous words or phrases but rather in the purport of the document itself, whether or not particular words or phrases in themselves be uncertain or doubtful in meaning. In other words, a document may still be ambiguous although it contains no words or phrases ambiguous in themselves.

The ambiguity in the document may arise solely from the unusual use therein of otherwise unambiguous words or phrases. An ambiguity may arise from words plain in themselves but uncertain when applied to the subject matter of the instrument. In short. such an ambiguity arises from the. use of words of doubtful or uncertain meaning or application. (Citations omitted).

We find that this requisite "uncertain meaning or application" in the language of the contracts presented here has been sustained by the language in paragraph 4 which is at least reasonably susceptible of the interpretation that the officers could be held personally liable on the repurchase of stock. It has been recognized in other jurisdictions that an officer's signature as agent of a corporation does not *ipso facto* preclude his personal liability on the contract. particularly where. as here. the contract contains inconsistent language tending to show an intent to impose personal liability. *See, e.g., Ricker v. B-W Acceptance Corporation*, 349 F.2d 982 (10th Cir. 1965); *Bissoniette v. Keys*, et al., 319 Mass. 134. 64 N.E.2d 925 (1946); *Brasher Motor & Finance Company v. Anderson*, 20 Utah 2d 104. 433 P.2d 608 (1967); *Gavazza v. Plummer*, 682 Wash. 14. 101 P. 370 (1901).

Since we have found an ambiguity exists in these contracts, its proper means of construction remains to be determined as a matter of law. We recognize that

language at its best is always a defective and uncertain instrument. that words do not define themselves. . . . Therefore. it is invariably necessary before a court can give any meaning to the words of a contract and can select one meaning rather than other possible ones as the basis for the determination of rights and other legal effects. that *extrinsic evidence shall be heard to make the court aware of the "surrounding circumstances,"* including the persons. objects. and events to which the words can be applied and which caused the words to be used. (Emphasis added). 3 Corbin. Contract § 536. 27-28. *Accord. Sumitomo v. Haiiau Nosan*, 25 Haw. 691 (1920); *See also. Kaehukona v. Ahuna*. 6 Haw. 192 (1877).

Consequently, we adopt the view allowing extrinsic evidence, *i.e.*, all evidence outside of the writing including parol evidence, to be considered by the court to determine the true intent of the parties if there is any doubt or controversy as to the meaning of the language embodying their bargain. *See* 3 Corbin, Contracts §§ 536, 579 (rev'd ed. 1960) (hereinafter Corbin); *Calamari & Perrilo*, "Plea for a Uniform Parol Evidence Rule and Principles of Contract Interpretation", 42 Ind. L.J. 333 (1967); J. Sweet, "Contract Making and Parol Evidence Diagnosis and Treatment of a Sick Rule", 53 Cornell L.R. 1036 (1968).

Furthermore, there is another reason we are adopting such a broad rule, namely, that the ambiguity presented in the instant case is a "patent" ambiguity, *i.e.*,

> so defectively expressed that no Court could gather the intention of the parties from it. It is not a "latent" ambiguity, for it is not the case of a clause intelligible in itself, which extrinsic circumstances have rendered doubtful. *Kaehukona v. Ahuna*, 6 Haw. at 193.

Here, the contradiction or ambiguity appears on the face of the instrument itself and it has been held that in such situations its resolution precludes parol evidence. *Ookala Sugar Co. v. Wilson*, 13 Haw. 127 (1900); *Kaehukona, supra;* 32A C.J.S. § 961, 433. However, this general rule has been severely criticized. *See* 32A C.J.S. § 961, 433-434. In fact, the distinction between latent and patent ambiguities is falling into disuse and the trend is toward admitting parol evidence to explain any ambiguity whether latent or patent. *See, e.g., Chang v. Ueoka*, 39 Haw. 341, 344 (1952); *see also*, Am. Jur.2d § 1073, 219. Therefore, although we consider the ambiguity in the contracts presented here as "patent", we no longer adhere to this distinction as precluding consideration of parol evidence of the surrounding circumstances in the making of a contract to aid the trial court in its determination of the intention of the parties. *Cf. Ookala Sugar Co., supra.*

Reversed and remanded for further proceedings in accordance with this opinion.

*Richard H. Hirai (Hirai & Hirai* of counsel) for Plaintiff-Appellant.

*Arnold T. Abe (Abe and Abe* of counsel) for Defendants-Appellees.