LILIA A. GRAHAM, Plaintiff-Appellee, *v.* WASHINGTON UNIVERSITY, Defendant-Appellant, BETTYJANE GRAHAM RUBBERT, et al., Defendants-Appellees, and HAWAIIAN TRUST COMPANY, LIMITED, Defendant and Third-Party Plaintiff-Appellee, *v.* FUMIE Y. WONG, Executrix of the Will of Ritsuko Yamakawa, deceased, Third-Party Defendant

NO. 5888

SEPTEMBER 27, 1977

RICHARDSON, C.J., KOBAYASHI, OGATA AND MENOR, JJ., AND CIRCUIT JUDGE KATO IN PLACE OF KIDWELL, J., DISQUALIFIED

OPINION OF THE COURT BY KOBAYASHI, J.

Washington University, whose interest is as a contingent remainderman (hereinafter appellant), brings this appeal from a judgment of the trial court granting partial summary judgment to Lilia A. Graham, plaintiff, widow of the deceased settlor, George Alvin Graham. The sole question for resolution by partial summary judgment was the determination of

the effective indenture of trust. The appellees participating in this appeal are those persons who would inherit from the settlor under the laws of intestate succession of the State of Hawaii as of the date of the termination of this trust, upon default of named remaindermen.

For reasons stated hereinafter we reverse.

### FACTS

The trial court made the following findings of fact, none of which are in dispute here:

On March 14, 1960, George Alvin Graham (hereinafter "Graham") established an inter vivos trust, transferring property, including real estate, to the Hawaiian Trust Company, Limited, as trustee (hereinafter trustee). The terms of the trust (hereinafter "1960 Trust") were incorporated in a formally executed document which provided, in part, that it "may be altered, amended or revoked in whole or in part by the Settlor during his lifetime . . . ." No particular method for alteration, amendment or revocation was specified. The 1960 Trust named appellees as contingent remaindermen of the trust corpus.

On March 30, 1962, Graham formally executed a document entitled "Amendments to Trust Agreements" (hereinafter "1962 Amendment") amending the 1960 Trust. One change was to name appellant in place of appellees as the contingent remainderman.

On or about August 12, 1965, Graham engaged in conversation with Mr. Mair, an employee of the trustee, and with an attorney, Mr. James Richmond, which led Mr. Richmond to prepare a formal deed of trust. Graham did not execute this amendment.

In September of 1967, Graham presented himself at the offices of the trustee and requested to see Mr. William Aull, the trust officer in charge of his trust. Mr. Aull was not in Hawaii at the time, and on learning this, Graham spoke about his trust with Mr. Aull's secretary, Mrs. Harriet M. Warren.

In an undated letter received on September 18, 1967, by the trustee (hereinafter "1967 letter"), Graham wrote Mr.

Aull saying in part, "I want you to revert to my original trust agreement and a certain lady with whom I spoke said that this has been taken care of."[1]

On September 18, 1967, Mr. Aull wrote a response to Graham's 1967 letter acknowledging its receipt stating:

This will acknowledge receipt of your recent letter regarding the present provisions of your trust dated March 14, 1960. You will remember that you amended this trust on March 30, 1962 to provide for changes in the provisions of the trust concerning its distribution upon your death. I am enclosing a copy of this Amendment which I believe is self-explanatory, and which is still in force. If you wish to change these provisions in any way, please let me know and I will see to it that the attorney prepares the necessary revisions.

. . . .

On October 26, 1967, Graham went to the office of the trustee. He met with Mr. Aull and informed him that there was to be no change made in the trust as amended in 1962. Graham died on June 30, 1968.

The appellant made an offer of proof by testimony or by the deposition of Robert K. Midkiff, Donald C. Mair, William E. Aull and Harriet M. Warren to explain the letter from Graham received by the trustee on September 18, 1967.

The court below concluded that, as a matter of law:

1. George Alvin Graham amended his original trust of March 14, 1960, on March 30, 1962. This was a valid amendment exercised pursuant to the terms of the power of amendment contained in the original trust document.

2. The draft amendment of August 12, 1965 was never executed and did not amount in law to a valid

---

[1] The letter, on the stationery of the Franciscan Hotel in San Francisco, reads in its entirety:

I went to see you but you were still in Australia. I want you to revert to my original trust agreement and a certain lady with whom I spoke said that this has been taken care of. I also requested that the dividends from the trust be sent to me at 550 Queen St. I believe there is a residual amount of around $800 in the trust after the $2000 is deducted for medical expenses. This amount has not yet been received by my office. I hope to see you in a few weeks.

amendment of the trust instrument of March 14, 1960 as amended March 30, 1962.

3. Mr. Graham's letter to Mr. Aull, received [by the trustee] on September 18, 1967 was an unambiguous written expression of Mr. Graham's intention to revert to the terms of the original trust instrument of March 14, 1960 prior to its amendment and to cancel or supersede the amendment of March 30, 1962.

4. Mr. Graham's subsequent oral statements to Mr. Aull concerning the amendment expressed in his letter of September 18, 1967 cannot modify the terms of said letter under the parol evidence rule.

5. Mr. Graham's subsequent oral statements to Mr. Aull cannot constitute a valid further amendment of his inter vivos trust because that trust involved real property and could not be amended, except by a writing signed by the Settlor under the Statute of Frauds, Chapter 656, Hawaii Revised Statutes.

6. Mr. Graham's prior statements to Mr. Aull cannot constitute a valid further amendment of his inter vivos trust because they do not constitute clear and convincing evidence of such an amendment as required by law.

### ISSUES

I. Whether Graham's 1967 letter was an unambiguous statement which effectively expressed his present intent to specifically amend his 1960 trust.

II. Whether the parol evidence rule bars the admission of certain statements, made by Graham subsequent to the 1967 letter, concerning the provisions of his trust.

III. Whether this state's Statute of Frauds, HRS Chapter 656, proscribes oral modification of a written trust where the corpus includes real property.

### OPINION

This court has stated previously that on review of an order

granting summary judgment under Rule 56(c), H.R.C.P.,[2] the appellate court must determine whether any genuine issue as to a material fact was raised and whether the moving party was entitled to judgment as a matter of law. In addition, we have held that, ". . . the inferences to be drawn from the underlying facts alleged in the materials (such as depositions, answers to interrogatories, admissions and affidavits) considered by the court in making its determination must be viewed in the light most favorable to the party opposing the motion." *Gum v. Nakamura,* 57 Haw. 39, 549 P.2d 471 (1976); *Technicolor, Inc. v. Traeger,* 57 Haw. 113, 551 P.2d 163 (1976); *Aku v. Lewis,* 52 Haw. 366, 477 P.2d 162 (1970); *Abraham v. Onorato Garages,* 50 Haw. 628, 446 P.2d 821 (1968).

I

The lower court concluded as a matter of law that Graham's 1967 letter was an unambiguous manifestation of his present intent to amend his trust. We are of the opinion that the trial court erred.

The 1967 letter contains only one sentence that addresses the issue of amending the trust, "I want you to revert to my original trust agreement and a certain lady with whom I spoke said that this has been taken care of." The words of that sentence raise questions regarding Graham's intent. Does "I want *you* to revert . . ." (emphasis added) express Graham's present intent to amend or is it an instruction to have and amendment prepared? If those first words are a manifestation of present intent, isn't Graham contradicting himself

---

[2] Rule 56, H.R.C.P., subsection (c) provides:

(c) Motion and Proceedings Thereon. The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

when he says ". . . this has been taken care of"? The reference there is to a conversation between Graham and Mrs. Harriet Warren, an employee of the trustee. According to the deposition of Mrs. Warren filed in the lower court, Graham spoke of amending his trust but gave her no indication of what changes he desired.

Appellant believes that 1967 letter was nothing more than Graham's expression of his desire that the trustee prepare an amendment to his trust. Viewing those facts considered by the trial court, and any inferences drawn from them, in a light most favorable to the appellant, we hold that the letter is at least reasonably susceptible to that construction.

Thus, clearly, an issue exists between the litigants as to the present intent of the settlor in the statement of the 1967 letter.

## II

Concluding as we do that the 1967 letter was ambiguous, we also hold that the trial court erred in applying the parol evidence rule to exclude extrinsic evidence of Graham's intent.

In a recent case involving the interpretation of certain contract provisions, this court adopted a rule ". . . allowing extrinsic evidence, *i.e.*, all evidence outside of the writing including parol evidence, to be considered by the court to determine the true intent of the parties if there is any doubt or controversy as to the meaning of the language embodying their bargain. . . ." (Citations omitted.) *Hokama v. Relinc Corp.*, 57 Haw. 470, 476, 559 P.2d 279, 283 (1977). And in *Trust Estate of Samuel H. Dowsett*, 38 Haw. 407, 409-410 (1949), this court stated:

> While it is true as contended by the remainderman that this intent must be gathered if possible from the trust instrument itself, nevertheless it is equally true that extrinsic evidence with respect to the circumstances surrounding the creation of the trust and the settlor's conception of any ambiguous words, employed by him in the trust instrument, may be received and considered for the

purpose of aiding the court in construing the instrument to determine his intent.

### III

Based on our opinion herein, we find it unnecessary to decide whether Hawaii's Statute of Frauds permits an oral modification of a written trust whose corpus includes real property.

In addition, we note that the procedural issue relative to Rule 75, H.R.C.P., and Rule 3 (b) (5), Rules of the Supreme Court, raised by the appellees in their answering brief is not only improperly raised but is without merit.

Remanded for further proceedings in accordance with this opinion.

*Ted Gamble Clause (Ronald W. K. Yee* with him on the briefs; *Case, Kay, Clause & Lynch* of counsel) for defendant-appellant.

*Asa M. Akinaka* for certain defendants-appellees.