123 P.3d 1241

**In the Matter of the Annie Quon Ann LOCK REVOCABLE LIVING TRUST.**

**No. 25214.**

Supreme Court of Hawai'i.

Dec. 9, 2005.

---

James E.T. Koshiba, Neal K. Aoki, and Keith K. Hayashi (of Koshiba Agena & Kubota), on the briefs, Honolulu, for beneficiaries-appellants Katie Lock Tamashiro, Philia Lau, Jacalyn Lock, Ranceford Lock, Gaylynne Sakuda, Natalie Urata, Verna Ching, and Carol Lock.

Patrick Y. Taomae, on the briefs, Honolulu, for petitioner-appellee Lena L. Wong in her capacity as successor trustee.

Gaylord G. Tom, on the briefs, for beneficiaries-appellee Lena L. Wong and Wah Tim Loc.

MOON, C.J., LEVINSON, NAKAYAMA, and DUFFY, JJ.; and Circuit Judge NAKAMURA, in Place of ACOBA, J., Recused, Concurring Separately.

Opinion of the Court by MOON, C.J.

Beneficiaries-appellants Katie Lock Tamashiro, Philia Lau, Jacalyn Lock, Ranceford Lock, Gaylynne Sakuda, Natalie Urata, Verna Cancino, and Carol Lock [hereinafter, collectively, Appellants] appeal from the First Circuit Court's[1] July 2, 2002 final judgment granting the Petition of Successor Trustee for Determination of Beneficiaries and Distribution of Estate (the petition). The trial court essentially adopted petitioner-appellee Lena L. Wong's (Lena Wong's) interpretation of the Annie Quon Ann Lock (Annie Lock) Revocable Living Trust Agreement (the Trust) as mandating distribution of the Trust assets in equal shares to Annie Lock's two surviving siblings, beneficiaries-appellees Lena Wong[2] and Wah Tim Lock.

On appeal, Appellants challenge the trial court's July 2, 2002 findings of fact (FOFs), conclusions of law (COLs), and order granting the petition. Appellants essentially contend that the plain and unambiguous language of the Trust dictates a per stirpes distribution, discussed *infra*, and, thus, the trial court erred in (1) concluding that the language of the Trust was ambiguous and (2) considering extrinsic evidence of Annie Lock's intent. For the reasons discussed below, we hold that Appellants' contentions lack merit. Accordingly, we affirm the trial court's final judgment.

## I. *BACKGROUND*

On March 22, 1993, Annie Lock, as settlor and trustee, executed the Trust, wherein all her assets are now held. At the time, Annie Lock's parents were deceased, and, of Annie Lock's eight siblings, three were deceased.

Article IV of the Trust provides in pertinent part:

A. *As of the date of my death,* ... the trustee shall distribute the remaining trust principal (including property to which the trustee may be entitled under my will or from any other source), *per stirpes, to my then living brothers and sisters in equal shares. In the event that any of said foregoing persons shall fail to survive me,* and shall leave a descendant or descendants living at the time of my death, such descendants shall represent their ancestors and take such ancestor's share, per stirpes, otherwise the share of such decedent shall drop out, thereby increasing the share of the others of said foregoing persons or their descendants, as the case may be.

B. Despite the preceding provisions of this instrument, the trustee may elect to withhold any property otherwise distributable under paragraph A of this Article to a beneficiary who has not reached the age of twenty-five years and may retain the property for that beneficiary in a separate trust named for the beneficiary, to be distributed to the beneficiary when he or she reaches the age of twenty-five years, or before then if the trustee so elects....

The Trust named Annie Lock's sister, Lena Wong, as successor trustee.

Annie Lock passed away on June 23, 1999. Annie Lock had never been married and had no children born to or adopted by her. Thus, Annie Lock had no surviving spouse and no surviving issue at the time of her death. Annie Lock was survived by two siblings, sister Lena Wong and brother Wah Tim Lock, numerous nieces and nephews, and several grandnieces and grandnephews.[3]

On March 2, 2001, Petitioner Lena Wong, as successor trustee of the Trust, filed the petition. The petition sought a judicial determination of the Trust beneficiaries and distribution of the Trust assets.[4] Petitioner

---

1. The Honorable Gary W.B. Chang presided over the underlying proceedings.

2. As stated *infra*, Lena Wong is the sister of Annie Lock and, therefore, a beneficiary under the Trust. Lena Wong is also the named successor trustee. As such, she essentially wears "two hats" in this case. Thus, for purposes of clarity, Lena Wong is referred to as Petitioner Lena Wong in her capacity as successor trustee and as Beneficiary Lena Wong in her capacity as one of the beneficiaries under the Trust.

3. Annie Lock's six predeceased siblings had a total of eighteen children. Of these eighteen children, one predeceased Annie Lock. That child, Francis Lock, was survived by six children, Annie Lock's grandnieces and grandnephews.

4. As of July 2, 2002, the Trust assets had a gross value of approximately $850,000 and an estimated net value of $750,000.

Lena Wong maintained that the Trust estate should be distributed, in equal shares, to herself and her brother, Wah Tim Lock.

On April 25, 2001, Virginia Naomi Shimada, Annie Lock's niece, on behalf of herself and other Lock descendants, filed a memorandum in opposition, arguing that the language of Article IV of the Trust unambiguously provided for the distribution of the Trust's assets to *all* of Annie Lock's siblings, "per stirpes." Under a per stirpes distribution, as advocated by Shimada, each of Annie Lock's eight siblings would receive a one-eighth share, with the surviving children of any predeceased sibling taking the share of the deceased parent in equal shares.

On May 9, 2001, Judge Colleen K. Hirai appointed Rhonda L. Griswold, Esq. (the Master), to serve as the Master to review, analyze, and provide recommendations regarding the interpretation of the Trust. In her report of June 1, 2001, the Master concluded that:

> Although the [Successor] Trustee [Lena Wong] contends that the clause *"per stirpes,* to my then living brothers and sisters in equal shares" is ambiguous, Paragraphs A and B of Article IV when read in their entirety are relatively clear: the trust estate is to be distributed to Annie Lock's surviving brothers and sisters in equal shares, but if a sibling does not survive her, that predeceased sibling's share is to be distributed to his or her then living descendants, per stirpes. If the descendant is not yet age 25, the descendant's share shall be kept in trust until he or she reaches age 25.

The Master recommended that the Trust assets be distributed to all of Annie Lock's siblings per stirpes.

Pursuant to a hearing held on June 8, 2001, the petition was deemed a contested matter and was assigned to the Honorable Gary W.B. Chang. On July 9, 2001, Shimada filed a motion for summary judgment, contending that the Trust provided for a per stirpes distribution of the Trust assets. On July 27, 2001, Beneficiaries Lena Wong and Wah Tim Lock filed a memorandum in opposition to Shimada's motion for summary judgment (memorandum in opposition), argu-

ing that the Trust assets should be equally divided between them as the only two surviving siblings of Annie Lock. Petitioner Lena Wong joined in the memorandum in opposition on July 31, 2001. On September 13, 2001, the trial court issued an order denying Shimada's motion for summary judgment, finding that there was an ambiguity in the Trust. On November 28, 2001, Shimada filed a notice of withdrawal from active participation in the proceedings.

A jury-waived trial was scheduled for the week of February 11, 2002. However, at a status conference held on January 28, 2002, trial was taken off the civil calender. Instead, the trial court directed Petitioner Lena Wong and Beneficiaries Lena Wong and Wah Tim Lock [hereinafter, collectively, Appellees] to file a stipulation of facts and proposed FOFs, COLs, and order in connection with the petition, to be served upon all parties in interest, together with a non-hearing notice stating that, unless a party in interest files a written objection within ten days from such service, the trial court would grant the relief sought in the petition.

On May 28, 2002, Appellees filed a stipulation of facts, and, on May 30, 2002, Appellees filed a notice of the proposed ruling based upon the stipulated facts.

On June 10, 2002, Appellants, comprising eight of Annie Lock's nieces and nephews, filed their objections to the stipulation of facts and the notice of the proposed ruling, on the ground that Annie Lock's intent to distribute her Trust assets "to her siblings, per stirpes, is clear and unambiguous based on a reading of the Trust as a whole." Despite Appellants' objections, the trial court entered its FOFs, COLs, and order granting the petition on July 2, 2002. The trial court's FOFs and COLs state in pertinent part:

Findings of Fact:

. . . .

18. [W]ith respect to the beneficiaries and distribution of the estate, Paragraph A of Article IV of the Trust [ ], hereinafter "Paragraph A," provides that Annie Lock's estate shall be distributed "per stirpes, to my then liv-

ing brothers and sisters in equal shares."

19. In describing the beneficiaries of the Trust, Paragraph A is ambiguous because the provision "per stirpes, to my then living brothers and sisters in equal shares" is susceptible, on its face, to two (2) plausible, yet conflicting, interpretations.

20. On the one hand, "per stirpes" means that an estate is to be divided into as many equal shares as there are siblings, whether surviving or deceased, of a decedent. Had Annie Lock wished to have her estate distributed "per stirpes," her estate would be divided into eight (8) shares, one for each sibling; the children of a deceased sibling would then share their parent's portion.

21. Hence, "per stirpes" is in conflict with the remainder of the provision, that directs Annie Lock's estate to be distributed "to my then living brothers and sisters in equal shares," to those siblings who are living at the time of Annie Lock's death.

Conclusions of Law:

. . . .

4. Although the phrase "per stirpes" standing alone has a single meaning, an "ambiguity" arises from Paragraph A of the Trust Agreement when read as a whole, for

. . . a document may still be ambiguous although it contains no words or phrases ambiguous in themselves. The ambiguity in the document may arise solely from the unusual use therein of otherwise unambiguous words or phrases. An ambiguity may arise from words plain in themselves but uncertain when applied to the subject matter of the instrument. *Hokama v. Relinc Corp.*, 57 Haw. 470, at 474–75, 559 P.2d 279 at 282 (1977) (citations omitted).

5. In the instant proceeding, this Court further had uncontroverted sworn statements regarding Annie Lock's intentions regarding the disposition of her Estate, and was authorized to consider such extrinsic evidence, as the Hawai'i Supreme Court has:

. . . adopt[ed] the view allowing extrinsic, evidence, *i.e.,* all evidence outside of the writing including parol evidence, to be considered by the court to determine the true intent of the parties if there is *any doubt or controversy as to the meaning of the language* embodying their bargain.[ ]

(Emphasis added). [*Hokama* ], 57 Haw. at 476, 559 P.2d at 283.

6. This Court is empowered to reform the subject Trust, even in the absence of any ambiguity; according to Bogert, *Trusts and Trustees* (Revised Second Edition, 1983) § 991:

If, due to a mistake in the drafting of a trust instrument, it does not contain the terms of the trust as intended by the settlor and trustee, the settlor or other interested party may maintain a suit in equity to have the instrument reformed so that it will contain the terms which were actually agreed upon.

7. If this Court had entertained any doubt regarding its authority to consider extrinsic evidence in the instant case, the issue is to be resolved in favor of Petitioner.

*In re Estate of Ikuta,* 64 Haw. 236, 244, 639 P.2d 400, 406 (1981).

8. This Court properly admitted evidence of [Annie Lock]'s intent, because "it is clear that there was a controversy before the probate court and the *Hokama* rule should apply." *See In re Estate of Ikuta,* 64 Haw. at 244, 639 P.2d at 406.

9. In Hawai'i, intestacy is not favored, and this Court is directed to apply legal doctrines in order to preserve or effectuate a trust. *See In re Estate of Chun Quan Yee Hop,* 52 Haw. 40, 469 P.2d 183 (1970); *Ikuta,* 64 Haw. at 245, 639 P.2d at 406 ("the law abhors intestacy and presumes against it").

10. Were Annie Lock's estate to be distributed "per stirpes," the result would be as though [Annie Lock] had died without a trust or will. *See* Sec-

tion 560:2–109, Hawai'i Rev[ised] Stat[utes]. Given the number of persons and the growing remoteness of their familial connection to [Annie Lock], this could hardly have been [Annie Lock]'s intention.

11. In accordance with the intentions of [Annie Lock], the Estate of Annie Quon Ann Lock shall be distributed in equal shares to Beneficiaries Lena L. Wong and Wah Tim Lock, who are the only siblings of Annie Quon Ann Lock who survived her.

The trial court also entered numerous findings with respect to the extrinsic evidence it relied upon in determining Annie Lock's intent. The trial court relied on (1) the affidavit of Richard Ing, Annie Lock's former attorney who had prepared the Trust, which essentially provides that Ing made a mistake in drafting the Trust and (2) the affidavit of Mary Lock, a widow of one of Annie Lock's predeceased brothers, which tends to corroborate Ing's sworn statements. Both affidavits indicate that Annie Lock intended her assets to be distributed only to her siblings who are living at the time of her death.

On July 2, 2002, final judgment was entered in favor of Appellees. Appellants timely appealed on July 16, 2002.

## II. STANDARDS OF REVIEW

### A. Construction of a Trust

■ "The construction of a trust is a question of law which this court reviews *de novo*." *In re Medeiros Testamentary Trust and Life Ins. Trust,* 105 Hawai'i 284, 288, 96 P.3d 1098, 1102 (2004) (citations omitted).

### B. Conclusions of Law

■ This court reviews the trial court's COLs *de novo. Bremer v. Weeks,* 104 Hawai'i 43, 51, 85 P.3d 150, 158 (2004). "A COL is not binding upon an appellate court and is freely reviewable for its correctness." *Allstate Ins. Co. v. Ponce,* 105 Hawai'i 445, 453, 99 P.3d 96, 104 (2004) (citations omitted). Moreover, "[a] COL that is supported by the trial court's [FOFs] and that reflects an application of the correct rule of law will not be overturned." *Id.* (citations omitted).

## III. DISCUSSION

### A. The Trial Court's Conclusion that Article IV of the Trust is Ambiguous

■ Appellants maintain on appeal that Paragraph A, Article IV of the Trust (Paragraph A) is not ambiguous, and, therefore, the trial court erred by considering extrinsic evidence to determine Annie Lock's intentions with respect to the distribution of her Trust assets. Specifically, Appellants challenge COL Nos. 4, 5, and 8 and argue that the use of the words "per stirpes" and "descendants" throughout Article IV of the Trust "together make it clear that a *per stirpes* distribution was intended." (Emphasis in original.) Furthermore, Appellants state that the Trust "goes on to explain the nature of a *per stirpes* distribution in eight (8) subsequent paragraphs of the Trust." (Emphasis in original.) Thus, Appellants submit that Annie Lock "intended her trust estate to be distributed to her siblings *per stirpes,* namely, that each of the eight siblings and/or their respective families would take a share, with the surviving children of any predeceased sibling taking the share of their deceased parent in equal shares."

In response, Appellees urge that the language of Paragraph A is ambiguous on its face. Appellees emphasize that the first sentence of Paragraph A, which appears to provide that only a surviving brother or sister qualifies as a beneficiary under the Trust, conflicts with the second sentence of Paragraph A, which suggests that the children of a non-surviving brother or sister of Annie Lock may also qualify as beneficiaries. Appellees maintain that this conflict creates an ambiguity and that, therefore, the trial court properly admitted and considered extrinsic evidence of Annie Lock's intent.

■ When construing a trust, this court is guided by principles relating to the interpretation of trusts as well as those relating to the interpretation of wills. *Trust Created Under the Will of Damon,* 76 Hawai'i 120, 124, 869 P.2d 1339, 1343 (1994). "A fundamental rule when construing trusts is that the intention of the settlor as expressed

in a trust instrument shall prevail unless inconsistent with some positive rule of law." *Id.* (internal brackets, quotation marks, and citation omitted). Additionally, "in construing a trust document to determine the settlor's intent, the instrument must be read as a whole, not in fragments." *Id.* (internal quotation marks omitted) (citing *In re Lopez*, 64 Haw. 44, 49, 636 P.2d 731, 735 (1981)).

> Similarly, [this court has held] that when interpreting wills, no single word of an ambiguous clause should be literally interpreted as though standing alone. Each word, phrase, clause and sentence of the paragraph should be considered in relation to each other and the paragraph itself construed as a part of the will as a whole.

*Id.* (internal brackets and quotation marks omitted) (citing *Queen's Hosp. v. Hite*, 38 Haw. 494, 505 (1950)). In determining whether an ambiguity exists,

> under the parol evidence rule, the test lies not necessarily in the presence of particular ambiguous words or phrases but rather in the purport of the document itself, whether or not particular words or phrases in themselves be uncertain or doubtful in meaning. In other words, *a document may still be ambiguous although it contains no words or phrases ambiguous in themselves. The ambiguity in the document may arise solely from the unusual use therein of otherwise unambiguous words or phrases.* An ambiguity may arise from words plain in themselves but uncertain when applied to the subject matter of the instrument. In short, *such an ambiguity arises from the use of words of doubtful or uncertain meaning or application.*

*Hokama v. Relinc Corp.*, 57 Haw. 470, 474–75, 559 P.2d 279, 282 (1977) (citing *Midkiff v. Castle & Cooke, Inc.*, 45 Haw. 409, 421, 368 P.2d 887, 894 (1962) (citations omitted) (emphases added)).

Applying these principles, we hold that the language of Article IV of the Trust is ambiguous on its face. As previously stated, the disputed language of Paragraph A provides:

> A. *As of the date of my death, . . .* the trustee shall distribute the remaining trust principal (including property to which the trustee may be entitled under my will or from any other source), *per stirpes, to my then living brothers and sisters in equal shares. In the event that any of said foregoing persons shall fail to survive me,* and shall leave a descendant or descendants living at the time of my death, such descendants shall represent their ancestors and take such ancestor's share, per stirpes, otherwise the share of such decedent shall drop out, thereby increasing the share of the others of said foregoing persons or their descendants, as the case may be.

(Some emphases in original.) (Some emphases added.) Although the phrases "per stirpes" and "to my then living brothers and sisters" in the first sentence of Paragraph A are unambiguous when separately considered, they are inconsistent with one another when Paragraph A is read as a whole. As this court has previously stated, "it is well-established that 'per stirpes' means 'by or according to root,' 'according to or by stock,' or 'by right of representation,' *i.e.,* that the descendants are to take through or as representatives of a parent."[5] *First Hawaiian Bank v. Keolanui (In re Trust Estate of Dwight),* 80 Hawai'i 233, 235, 909 P.2d 561, 563 (1995) (citing Restatement (Second) Property (Donative Transfers) §§ 25.9 and 28.2 (1988)). Moreover, "[i]mplicit in the phrase is the concept that the 'root' or 'stock' begins with the ancestors of those who are to take and not with the takers themselves."

5. We note that, in 1996, the legislature enacted Hawai'i Revised Statutes (HRS) § 560:2–709. *See* 1996 Haw. Sess. L. Act 288, § 1 at 863. Section 560:2–709(c) provides a definition of "per stirpes":

> (c) Per stirpes. If a governing instrument *executed after January 1, 1997* calls for property to be distributed "per stirpes," the property is divided into as many equal shares as there are:
>
> (1) Surviving children of the designated ancestor; and
> (2) Deceased children who left surviving descendants.
>
> (Emphasis added.) Inasmuch as Annie Lock's Trust was executed in 1993, section 560:2–709(c) is not applicable in this case.

*Id.; see also Weller v. Sokol,* 271 Md. 420, 318 A.2d 193 (1974) (stating that "per stirpes" means taking the share of one's ancestors).

In the present case, a per stirpes distribution of the Trust assets would result in each of Annie Lock's eight siblings taking a one-eighth share, with the surviving children of any predeceased sibling taking the share of their deceased parent in equal shares. Under a per stirpes distribution, it is irrelevant whether any of Annie Lock's eight siblings survive her at the time of her death; as long as her siblings leave a living descendant, then such descendant is entitled to "take through or as representatives of a parent." However, the first sentence of Paragraph A also provides that the Trust assets are to be distributed to Annie Lock's "then *living* brothers and sisters." (Emphasis added.) Inasmuch as part of the first sentence *requires* the sibling to be alive at the time of Annie Lock's · death, the first sentence is clearly inconsistent with a per stirpes distribution, which does *not require* the sibling to be alive at the time of Annie Lock's death.

Moreover, the second sentence of Paragraph A also conflicts with the requirement in the first sentence that a sibling be alive at the time of Annie Lock's death in order for him or her to take under the Trust. As stated in the Trust, the second sentence of Paragraph A provides an explanation of how to distribute the Trust assets "[i]n the event that any of said foregoing persons[,]" *i.e.,* Annie Lock's living brothers and sisters at the time of her death, "shall fail to survive [Annie Lock.]" Clearly, on its face, Article IV is susceptible to two contradictory interpretations: (1) a distribution of the Trust assets among Annie Lock's brothers and sisters that are alive at the time of her death or (2) a per stirpes distribution of the Trust assets, resulting in each of Annie Lock's eight siblings receiving a one-eighth share of the Trust assets. Based on the foregoing, the ambiguity in Article IV of the Trust arises from the unusual use therein of otherwise unambiguous words and phrases. Accordingly, we hold that the trial court correctly concluded that an ambiguity exists in Article IV of the Trust.

B. *The Trial Court's Conclusion that Extrinsic Evidence is Admissible to Determine Annie Lock's Intent*

### 1. The Trial Court's Application of the "*Hokama* Rule"

Appellants next argue that the trial court incorrectly applied the "*Hokama* rule" with respect to the admission of extrinsic evidence in the context of this case because the *Hokama* rule involved a disputed contract, not a disputed trust. Moreover, Appellants allege that the trial court "ignored Hawai'i trust law that specifically prohibits extrinsic evidence absent the finding of an 'ambiguity' in the trust language."

In *Hokama,* this court adopted

the view allowing extrinsic evidence, *i.e.,* all evidence outside of the writing including parol evidence, to be considered by the court to determine the true intent of the parties if there is any doubt or controversy as to the meaning of the language embodying their bargain.

*Hokama,* 57 Haw. at 476, 559 P.2d at 283. *Hokama* also eliminated the common law distinction between "patent" and "latent" ambiguities and permitted "parol evidence of the surrounding circumstances in the making of a contract to aid the trial court in its determination of the intention of the parties," where the contracts at issue presented an ambiguity on their face, *i.e.,* a patent ambiguity. *Id.* This court applied the *Hokama* rule in *Graham v. Washington Univ.,* 58 Haw. 370, 569 P.2d 896 (1977), and in *In re Estate of Ikuta,* 64 Haw. 236, 639 P.2d 400 (1981), wherein each case involved ambiguous language used in the context of a trust. The court in *Graham* applied the *Hokama* rule and held that the trial court should have admitted extrinsic evidence to ascertain the settlor's intent with respect to his trust. *Graham,* 58 Haw. at 375–76, 569 P.2d at 899–900. In applying the *Hokama* rule in *Ikuta,* this court held that the trial court properly considered extrinsic evidence to determine the settlor's intent with respect to his trust. *Ikuta,* 64 Haw. at 244–45, 639 P.2d at 405–06. Both *Graham* and *Ikuta* essentially stand for the proposition that, where there is "any

doubt or controversy[,]" *i.e.*, an ambiguity, "as to the meaning of the language" used in a trust, extrinsic evidence may be considered by the court to determine the true intent of the settlor. Finally, although

> it is true as contended by [Appellants] that [the settlor's] intent must be gathered if possible from the trust instrument itself, nevertheless it is equally true that extrinsic evidence with respect to the circumstances surrounding the creation of the trust and the settlor's conception of any ambiguous words, employed by [her] in the trust instrument, may be received and considered for the purpose of aiding the court in construing the instrument to determine [her] intent.

*Graham*, 58 Haw. at 375–76, 569 P.2d at 900 (quoting *In re Trust Estate of Dowsett*, 38 Haw. 407, 409–10 (1949)). Thus, inasmuch as there is doubt or controversy, *i.e.*, an ambiguity, as to the meaning of the language used in the Trust, Appellants' contentions are wholly without merit. Accordingly, we hold that the trial court properly admitted extrinsic evidence of Annie Lock's intent under the *Hokama* rule.

## 2. The Trial Court's Findings and Conclusion with respect to Annie Lock's Intent

 Appellants further allege that, assuming *arguendo* the language of the Trust is ambiguous, COL No. 11 is wrong because, "[a]lthough not artfully stated, the Trust language repeatedly and specifically states Annie [ ] Lock's intent that the Trust [assets] be distributed per stirpes."[6] In response, Appellees counter that none of the other

articles of the Trust support a per stirpes interpretation.

In this case, the trial court's findings with respect to the evidence of Annie Lock's intent focus solely on the two affidavits proffered by Appellees, *i.e.*, the affidavits of Richard Ing and Mary Lock. Inasmuch as Appellants do not object to the trial court's findings with respect to the subject affidavits, these findings are undisputed. *See* Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(4)(C) (2003)[7]; *Okada Trucking Co. v. Bd. of Water Supply*, 97 Hawai'i 450, 458, 40 P.3d 73, 81 (noting that FOFs not challenged on appeal are binding on the appellate court), *reconsideration denied*, 101 Hawai'i 233, 65 P.3d 180 (2002); *Kawamata Farms, Inc. v. United Agri Prod.*, 86 Hawai'i 214, 252, 948 P.2d 1055, 1093 (1997) ("If a finding is not properly attacked, it is binding; and any conclusion which follows from it and is a correct statement of law is valid.") (Citation omitted.); *Leibert v. Fin. Factors, Ltd.*, 71 Haw. 285, 288, 788 P.2d 833, 835 (1990) (FOFs not specified as error on appeal pursuant to HRAP Rule 28(b)(4)(C) are treated as unchallenged on appeal); *cf. Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 125, 839 P.2d 10, 31 (conclusion of law not challenged on appeal is treated as binding on the appellate courts), *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992).

As previously mentioned and according to his affidavit, Ing was Annie Lock's former attorney who prepared the Trust. In so doing, Ing borrowed a standard form template from the Will and Trust form book published by Hawaiian Trust Company (the template). Ing readily admits that he "for-

---

6. COL No. 11 states, in its entirety:

 In accordance with the intentions of the Settlor, the Estate of Annie [ ] Lock shall be distributed in equal shares to Beneficiaries Lena L. Wong and Wah Tim Lock, who are the only siblings of Annie [ ] Lock who survived her.

7. Under HRAP Rule 28(b)(4)(C), appellants are required to provide, *inter alia*, the following:

 (4) A concise statement of the points of error set forth in separately numbered paragraphs. Each point shall state: (i) the alleged error committed by the court or agency; (ii) where

in the record the alleged error occurred; and (iii) where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court or agency. Where applicable, each point shall also include the following:

. . . .

(C) when the point involves a finding or conclusion of the court or agency, a quotation of the finding or conclusion urged as error.

. . . .

 Points not presented in accordance with this section will be disregarded, except that the appellate court, at its option, may notice a plain error not presented.

got" to remove the term "per stirpes" and the "explanatory provision" from the template when he drafted Annie Lock's Trust.[8] Article IV of the template provides in relevant part:

> A. As of the date of my death, ... the trustee shall distribute the remaining trust principal (including property to which the trustee may be entitled under my will or from any other source), *per stirpes,* to my then living descendants.
>
> B. Despite the preceding provisions of this instrument, the trustee may elect to withhold any property otherwise distributable under paragraph A of this Article to a beneficiary who has not reached the age of twenty-five years and may retain the property for that beneficiary in a separate trust named for the beneficiary, to be distributed to the beneficiary when he or she reaches the age of twenty-five years, or before then if the trustee so elects....

(Emphases in original.) With respect to the circumstances surrounding the creation of Annie Lock's Trust, Ing avers that:

> 5. Affiant agrees that the language of Paragraph A is confusing as to who are the beneficiaries of the Estate because the term "per stirpes" could refer to all eight (8) brothers and sisters of Annie Lock and their descendants or to only the five (5) brothers and sisters of Annie Lock who were living at the time Annie Lock made and entered into the Trust Agreement and their descendants, while the phrase "to my then living brothers and sisters" refers to only the two (2) brothers and sisters of Annie Lock who were living at the time of her death.
>
> 6. Before preparing the Trust Agreement, Affiant met with Annie Lock and her brother, Wah Sing Lock,[9] whom Affiant had known for almost thirty (30) years, to discuss the estate plan of Annie Lock.
>
> 7. At the meeting, Wah Sing Lock completed a confidential questionnaire for Annie Lock, on which Wah Sing Lock listed

only the five (5) brothers and sisters of Annie Lock who were living at the time of the meeting.

> 8. As a result, Affiant was unaware at the time of the meeting that three (3) brothers and sisters of Annie Lock had already died prior to the meeting.
>
> 9. At the meeting, the distribution of the Estate was discussed and considered, including, but not limited to, the distribution of the Estate to the five (5) brothers and sisters of Annie Lock who were living at the time of the meeting and their descendants.
>
> 10. However, Wah Sing Lock suggested that the Estate be distributed to only the brothers and sisters of [ ] Annie Lock who are living at the time of her death.
>
> 11. Annie Lock agreed with the suggestion of Wah Sing Lock, thereby deciding to distribute the Estate to only the brothers and sisters of [ ] Annie Lock who are living at the time of her death.
>
> 12. Therefore, it was Affiant's intention to prepare Paragraph A to reflect the decision of Annie Lock to distribute the Estate to only the brothers and sisters of [ ] Annie Lock who are living at the time of her death.
>
> 13. In preparing Paragraph A, Affiant used a standard form in the Will and Trust form book published by Hawaiian Trust Company, which contained the language "per stirpes to my then living descendants in equal shares," as well as an explanatory provision.
>
> 14. While Affiant changed the word "descendants" to "brothers and sisters," Affiant forgot to remove the term "per stirpes," as well as the explanatory provision.
>
> 15. Accordingly, the language "per stirpes, to my then living brothers and sisters in equal shares" as set forth in Paragraph A should have read "to my then

---

8. Ing's affidavit is unclear as to what he means by "explanatory provision," *i.e.,* whether he is referring to the second sentence in Paragraph A, which is not part of the template language, or whether it refers to Paragraph B, which corresponds to Paragraph B of the template.

9. Wah Sing Lock passed away prior to Annie Lock.

living brothers and sisters in equal shares," and the explanatory provision should have been removed.

Despite Ing's sworn statement that the template contained the language "per stirpes to my then living descendants *in equal shares*," the template does *not* contain the phrase "in equal shares." (Emphasis added.) However, Appellants do not challenge FOF No. 22, which states, in its entirety:

> In drafting Paragraph A, Richard Ing used as his template a standard form set forth in the Will and Trust form book published by Hawaiian Trust Company, and this standard form contains the language "per stirpes to my then living descendants in equal shares", as well as an explanatory provision.

Notwithstanding this finding, a comparison of the template and the Trust indicates that the template language, "per stirpes, to my then living descendants," was altered to "per stirpes, to my then living brothers and sisters in equal shares." Although FOF No. 22 may be erroneous, it would not affect the outcome of the trial court's decision. *See Torres v. Torres,* 100 Hawai'i 397, 412, 60 P.3d 798, 813 (2002) (noting that in order for a court's erroneous finding to constitute reversible error, appellant must indicate how the erroneous finding affected the outcome of the trial court's decision). The only relevant inquiry in this case is whether the affidavit evinces the intent of the settlor, Annie Lock. Here, Ing clearly avers that it was Annie Lock's intent to distribute her estate to her siblings who are alive at the time of her death.

Further, the affidavit of Mary Lock, Wah Sing Lock's widow, corroborates Ing's sworn statements regarding Annie Lock's intent:

> 1. Affiant is the widow of Sonny Lock, who was also known as Wah Sing Lock, who was the brother of Annie Lock, and who died prior to the death of Annie Lock.

> 2. In early 1993, Sonny Lock took Annie Lock to meet with Richard Ing, who is an attorney, to discuss and decide who her estate would be left to when she died and to have her revocable living trust prepared.

> 3. Later in 1993, Annie Lock told Affiant that at that meeting with Richard Ing, Sonny Lock had advised her to leave her estate only to her surviving brothers and sisters, and that is what Annie Lock had decided to do.

> 4. Shortly before her death in mid–1999 at St. Francis Hospital, Annie Lock again told Affiant that she was leaving her estate only to her surviving brothers and sisters, specifically mentioning Lena Wong and Wah Tim Lock, who were the only surviving brothers and sisters of Annie Lock at that time.

> 5. Affiant has no interest in the estate of Annie Lock as a beneficiary or in any other capacity.

> 6. Craig Lock and Claire Asam are the children of Sonny Lock and Affiant, are the nephew and niece of Annie Lock, and are potential beneficiaries of the estate of Annie Lock.

The trial court expressly found that Mary Lock's sworn statements were contrary to the interests of Mary Lock's children.

As the trial court found in its undisputed findings, the affidavits proffered by Appellees make it clear that Annie Lock intended distribution of the Trust assets among her siblings who survived her. Thus, inasmuch as COL No. 11 is supported by the trial court's undisputed FOFs, and reflects an application of the correct rule of law, COL No. 11 is correct. Accordingly, we hold that the trial court did not err in distributing the Trust assets in equal shares to Lena Wong and Wah Tim Lock, the only siblings that survived Annie Lock at the time of her death.[10]

---

10. Appellants also raise on appeal that the trial court incorrectly concluded that it "is empowered to reform the subject Trust, even in the absence of ambiguity." Although the trial court concluded that the Trust was ambiguous, it also held, alternatively, that even if the Trust was not ambiguous, it had the power to reform the Trust

"[i]f, due to a mistake in the drafting of a trust instrument, it does not contain the terms of the trust as intended by the settlor and trustee[.]" COL No. 6 (quoting Bogert, § 991 Trusts and Trustees (Revised Second Edition, 1983)). Inasmuch as we hold that the Trust is ambiguous, we need not reach this issue.

### IV. *CONCLUSION*

Based on the foregoing, we affirm the trial court's July 2, 2002 final judgment in favor of Appellees.

### Concurring Opinion by NAKAMURA, J.

I concur in the result. However, I suggest that the trial court's final judgment may be affirmed by allowing the reformation of the Trust provisions so that they conform with Annie Lock's intent on the ground that she, or the drafter of the Trust, made a unilateral mistake. *See* 90 C.J.S. Trusts § 95; cmt. e, *Restatement (Second) of Trusts* § 333 (1959).