**Electronically Filed
Supreme Court
SCWC-15-0000960
18-JUN-2020
10:45 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

———————————————

IN THE MATTER OF
THE ELAINE EMMA SHORT REVOCABLE LIVING TRUST AGREEMENT
DATED JULY 17, 1984, as amended.

———————————————

SCWC-15-0000960

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-15-0000960; T. No. 15-1-0165)

JUNE 18, 2020

McKENNA, POLLACK, WILSON, JJ., WITH RECKTENWALD, C.J.,
CONCURRING IN PART AND DISSENTING IN PART,
WITH WHOM NAKAYAMA, J., JOINS

OPINION OF THE COURT BY POLLACK, J.

In this case, we consider whether the Intermediate Court of Appeals (ICA) properly upheld an order and judgment of the probate court that modified a trust provision regarding the distribution of trust principal without issuing findings of fact to explain or support its ruling. We also address whether the

terms of a trust may override a trustee's statutory requirement to provide accounts information to contingent beneficiaries.

Upon review, we conclude that the absence of factual findings by the probate court did not enable the ICA to meaningfully review the basis of the probate court order to modify the trust and that the ICA's reliance on selective extrinsic evidence was improper. We further hold that the ICA erred when it concluded that the terms of a trust could supersede the trustee's statutory duty to provide accounts information to contingent beneficiaries of the trust. Accordingly, we vacate the ICA's judgment on appeal and the probate court's order and judgment, except as specified below, and remand the case for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. General Overview

Elaine Emma Short (Elaine), who passed away on January 3, 2012, was married to Clarence Short (Clarence), and they had two sons, David Short (David) and William Short (William). Elaine's brother, Leroy Cook, is the father of five children (collectively, "the Cooks").[1] In a will dated September 4, 1979

---

[1] LeRoy Cook predeceased Elaine and thus is represented in this suit by his daughter, Kristin Linae Cook Kline.

("1979 Will"), Elaine named Clarence as trustee of her estate, with their two sons and First Hawaiian Bank (FHB) as successor trustees in the event Clarence was unavailable or predeceased her. Elaine subsequently established a revocable living trust in 1984 ("initial trust"), as did her husband ("Clarence's Trust"). Both trusts were created to provide for the settlor's respective spouse, as well as their two sons David and William. Article V.B.(a) of the initial trust provided that if Elaine was not survived by Clarence at the time of her death, subtrusts would be created for David and William, from which the Successor Trustee could distribute principal and income to her sons as needed for health, education, and support and maintenance for each son's accustomed standard of living.[2] Article V.B.(a) also

---

[2]     Article V.B. of the initial trust provided as follows:

B. Upon the Settlor's death, if the Settlor is survived by any of the Settlor's descendants, but not by the Settlor's spouse CLARENCE RAYMOND SHORT, then at such time the Successor Trustee shall hold, administer, and distribute all of the then remaining residuary trust estate, including accumulated and accrued but undistributed income and any property received from the Settlor's probate estate, as follows:

(a) The Successor Trustee shall divide the aforesaid trust property into two equal shares. The Successor Trustee shall hold one of such shares as a separate trust for the benefit of the Settlor's son, WILLIAM SHORT, and the Successor Trustee shall hold the other of such shares as a separate trust for the Settlor's son, DAVID SHORT. The Successor Trustee shall pay the income and principal of each separate trust to the Settlor's son for whom such share was set aside, in accordance with his needs for health, education, support and maintenance in his accustomed standard of

(continued . . .)

3

provided that once each son reached the age of 45, the Successor Trustee would distribute to that son the remaining trust balance and terminate his subtrust. Under Article V.B.(b) of the initial trust, if either son died before Elaine, the property that would have otherwise funded the subtrust for the deceased son's benefit was to be distributed to his issue, per stirpes; if the son died without issue, the Successor Trustee was to hold the property for the surviving son. Articles V.C and VIII provided that if neither Clarence nor any of Elaine's descendants survived her, then the trust estate was to be distributed to Elaine's heirs-at-law at the time of her death.[3]

---

(. . . continued)

> living. As each of the Settlor's said sons reaches the age of thirty-five (35) years, the Successor Trustee shall distribute to him one-half (1/2) of the property remaining in the separate trust set aside for his benefit. When each of the Settlor's sons reaches the age of forty-five (45), the Successor Trustee shall distribute the balance of the trust balance remaining in the separate trust set aside for his benefit, and that trust shall thereupon terminate.

(b) If either of the Settlor's said sons shall not be living at the time when a separate trust otherwise would be established hereunder for his benefit, the property which otherwise would have funded the separate trust for his benefit shall be distributed to his issue, per stirpes; and if he leaves no issue who are then living, such property shall be held by the Successor Trustee of the separate trust established for the other of the Settlor's said sons; and if neither of the Settlor's said sons is living at the time when separate trusts otherwise would be established for them hereunder, all of the aforesaid trust property shall be distributed to the Settlor's issue, per stirpes.

[3] Article V.C provided as follows:

(continued . . .)

On March 10, 1993, Elaine amended several articles of the initial trust ("Elaine's Trust").[4] Relevant to this litigation, Article V.B.(a) was amended to provide the Successor Trustee with full discretion to withhold distribution of income to David and William if warranted by the circumstances (Amended Article V.B.(a)).[5] Upon Elaine's death, the Successor Trustee

---

(. . . continued)

> Upon the settlor's death, if neither the Settlor's spouse CLARENCE RAYMOND SHORT nor any of the Settlor's descendants survive the Settlor, then at such time the Successor Trustee shall dispose of all of the then remaining residuary trust estate under Article VIII herein below.

Article VIII provided as follows:

> If, at any time, the foregoing provisions do not provide persons qualified to take the trust estate, then the trust estate shall be distributed to those persons who would constitute the heirs-at-law of the Settlor as then determined under, and in the proportions then provided by, the laws of the state of the Settlor's domicile at the date of the Settlor's death relating to descent and distribution of property, the same in all respects as though the Settlor's death had occurred at the time that such assets became subject to distribution under this Article.

[4]     Articles V.C. and VIII were not modified by the 1993 amendments.

[5]     Amended Article V.B.(a) provides as follows:

> (a) The Successor Trustee shall divide the aforesaid trust property into two equal shares. The Successor Trustee shall hold one of such shares as a separate trust for the benefit of the Settlor's son, WILLIAM SHORT, and the Successor Trustee shall hold the other of such shares as a separate trust for the Settlor's son, DAVID SHORT. The Successor Trustee shall pay all or portions of the income of each separate trust to the Settlor's son for whom such share was set aside, in accordance with his needs for health, education, support and maintenance as determined by the Successor Trustee in its sole discretion, with full

(continued . . .)

5

could only distribute income, and not principal, from David and William's respective subtrusts as necessary to meet their needs for "health, education, support, and maintenance," as determined by the Successor Trustee in its sole discretion. Also, because William at the time had a drug-related disability, income distributions to him were to be restricted to vital necessities unless he had been drug-free for at least a year. The amended trust no longer provided for the distribution of principal to either of Elaine's sons after her death nor did it provide for termination of their subtrusts.

On June 8, 1993, William passed away unmarried and without children. Under the terms of Elaine's Trust, William's interest in the property was to be held by the trustee for David at Elaine's death.[6] Clarence passed away on April 10, 2010.

_____

(. . . continued)

discretion to withhold any income from time to time if circumstances so warrant. In the case of William Short who has a drug-related disability at the present time, the Successor Trustee shall withhold income for everything but the vital necessities unless said son is drug-free and has continued to be for at least one year, the Successor Trustee to have absolute discretion in making such determinations from time to time.

[6] Should one or both sons not survive Elaine, Amended Article V.B.(b) of Elaine's Trust provides the following instructions:

If either of the Settlor's said sons shall not be living at the time when a separate trust otherwise would be established hereunder for his benefit, the property which otherwise would have funded the separate trust for his benefit shall be distributed to his issue, per stirpes; and if he leaves no issue who are then living, such property

(continued . . .)

Elaine was declared incapacitated in 2005, and she passed away on January 3, 2012. David has not married and has no children.

### B. Probate Court Petition

On August 16, 2015, FHB, as the trustee of Elaine's Trust, filed a Petition for Instructions Regarding Distribution and Termination, and for Modification of Trust (petition) in the Circuit Court of the First Circuit (probate court) that requested in relevant part that the probate court (1) instruct the trustee that David's subtrust created under Amended Article V.B.(a) of Elaine's Trust terminate upon the death of David; (2) instruct the trustee that discretionary distributions of principal may be made from David's subtrust; and (3) modify Elaine's Trust to provide for a termination date and the discretionary distribution of principal, by amending Article V.B(a);[7] and (4) allow payment of FHB's attorneys' fees and

---

(. . . continued)

> shall be held by the Successor Trustee of the separate trust established for the other of the Settlor's said sons; and if neither of the Settlor's said sons is living at the time when separate trusts otherwise would be established for them hereunder, all of the aforesaid trust property shall be distributed to the Settlor's heirs at law, determined by the laws of the State of Hawaii in force at such time.

[7] The proposed modifications to Article V.B.(a) of Elaine's Trust read as follows:

> a) The Successor Trustee shall divide the aforesaid trust property into two equal shares. The Successor Trustee shall hold one of such shares as a separate trust for the benefit of the Settlor's son, WILLIAM SHORT, and the

(continued . . .)

costs. In the petition, FHB listed the Cooks as heirs at law and contingent beneficiaries under Elaine's Trust.

David filed an affidavit in support of FHB's petition, asserting that because he and his mother Elaine had little to no contact with her brother Leroy, or with any of Leroy's issue for many decades prior to Elaine's death, it was his belief that Elaine's intent was to make her husband and sons the "primary beneficiaries" of her trust.

The Cooks contested the petition by filing a response and objection to FHB's petition. The Cooks agreed that David's subtrust should terminate at David's death but opposed FHB's proposed modification that would allow the distribution of principal to David. Elaine's Trust was not ambiguous as to the

---

(. . . continued)

> Successor Trustee shall hold the other of such shares as a separate trust for the Settlor's son, DAVID SHORT. The Successor Trustee shall pay all or portions of the income and portions of the principal of each separate trust to the Settlor's son for whom such share was set aside, in accordance with his needs for health, education, support and maintenance, as determined by the Successor Trustee in its sole discretion, with full discretion to withhold any income or principal from time to time if circumstances so warrant, and each separate trust shall terminate upon the death of the Settlor's son for whom such share was set aside. In the case of William Short who has a drug-related disability at the present time, the Successor Trustee shall withhold income for everything but the vital necessities unless said son is drug-free and has continued to be for at least one year, the Successor Trustee to have absolute discretion in making such determinations from time to time.

(Emphasized portions indicate proposed modifications.)

permitted distribution of the principal, the Cooks contended, and thus FHB's attempt to change the language of Elaine's Trust should be rejected as improper.

The Cooks also disputed the contents of David's affidavit. The Cooks, through the declaration of Susan Kay Cook Galvin (Susan), stated that Leroy's relationship with Elaine was close and that, through Elaine's numerous visits to Minnesota to see Leroy and the Cooks over many years, they learned Elaine's relationship with David was "strained" in light of concerns during her lifetime regarding the level of financial support David expected from her. Susan declared that in 1998 she stayed with Elaine in a Minneapolis hotel for three days during the Opera America Convention, and that in 1999 she stayed with Elaine and Clarence in Hawai'i. Susan further stated that after Leroy died, the Cooks maintained regular phone contact with Elaine until 2009 or 2010. The Cooks also included several photographs of themselves with Elaine in activities, two of which appear to show Elaine present at one of the Cooks' weddings, while others appear to be group family photos. The Cooks also submitted a petition for the appointment of a guardian that showed David's whereabouts were unknown when Elaine needed a guardian due to her advanced dementia. Further, the Cooks argued that the amendment to Article V.B.(a) was not made in response to Williams' drug-related disability because

Elaine did not amend this provision after William's death that year. Lastly, the Cooks requested attorneys' fees from the principal of Elaine's Trust, arguing that their involvement in the matter was necessary to clarify the provisions of Elaine's Trust.

In response to the Cooks' objections, FHB argued that its petition properly sought clarification of its duties under Elaine's Trust. FHB stated that permitting discretionary distributions of principal to David would be in furtherance of Elaine's intent to provide for her sons and any issue they might have. It was premature for the Cooks to assert their rights as contingent remainder beneficiaries, FHB contended, because the Cooks would be "completely divested" if David were to have issue before his death. While Elaine's Trust did not expressly provide for distributions of principal to David, FHB maintained, it did not expressly prohibit such action and thus Elaine's Trust was ambiguous. FHB contended that Hawai'i trust law permits the court to modify a trust document, and that the proposed amendment was supported by the text of Elaine's Trust and extrinsic evidence. FHB also argued against payment of attorneys' fees to the Cooks from the principal as a potentially improper use of trust assets for non-beneficiaries because the Cooks were contingent beneficiaries. Finally, FHB requested that its attorneys' fees be paid from the principal because it

had raised questions that affected the principal of the trust estate.

In a supplement to its initial petition, FHB also responded to a September 16, 2015 letter from the Cooks' counsel requesting information under Hawai'i Revised Statutes (HRS) § 560:7-303(2)&(3).[8] In the letter, the Cooks requested that FHB provide them with the following information: (a) a list of assets of Elaine's Trust at the time of Elaine's death, (b) a statement of accounts for Elaine's Trust during 2012-2014, (c) a statement of income distributed to David during 2012-2015, (d) the amount of income that David received from Clarence's Trust

---

[8]     HRS § 560:7-303 (2006) provides in relevant part as follows:

> The trustee shall keep the beneficiaries of the trust reasonably informed of the trust and its administration; provided, however, during the life of the settlor, the trustee of a revocable inter vivos trust shall not be required to register the trust, reveal the terms to beneficiaries, or account to beneficiaries, unless otherwise directed by the settlor.  In addition:
>
> . . . .
>
> (2) Upon reasonable request, the trustee shall provide the beneficiary with a copy of the terms of the trust which describe or affect the beneficiary's interest and with information about the assets of the trust and the particulars relating to the administration.
>
> (3) Upon reasonable request, a beneficiary is entitled to a statement of the accounts of the trust annually and on termination of the trust or change of the trustee.

during 2012-2015, and (e) the amount of David's total income for 2012-2015.

FHB objected to the Cooks' request for information regarding David's income and information as to Clarence's Trust because the requested information did not relate to Elaine's Trust and was not necessary for the Cooks to protect their interest. Citing Article XIV of Elaine's Trust, FHB contended that only adult beneficiaries then entitled to receive income or principal of the trust estate were allowed to receive regular accounts of Elaine's Trust.[9] Since the Cooks were not yet in the position to receive income from Elaine's Trust and because Clarence's Trust was a separate matter altogether, FHB argued that requests (d) and (e) set forth in the Cooks' letter were unwarranted. FHB requested the probate court give instructions as to whether the Cooks, as contingent remainder beneficiaries who could be completely divested of their interest in Elaine's Trust if David dies with issue, were entitled to the information sought in requests (a), (b), and (c).

---

[9] Article XIV of Elaine's Trust provides in pertinent part as follows:

> The Trustee and all Successor Trustees shall not be required to give any bond or surety or file any account in any court, but shall deliver regular accounts to the Settlor during the Settlor's lifetime and subsequently to all adult beneficiaries then entitled to receive income or principal of the trust estate.

David filed a response to FHB's petition and to the Cooks' objection to modify Elaine's Trust. In his response, David agreed with both FHB and the Cooks as to setting a proposed termination date for Elaine's Trust. David further agreed with FHB that he should receive discretionary distributions of principal from Elaine's Trust, stating that Elaine's Trust contained ambiguous language that should be read in his favor as the sole income beneficiary. David argued that Elaine's unquestionable intent was to provide for him, William, and their respective descendants, and he was the only one living. David disputed the Cooks' objections, contending that if the Cooks were truly as close to Elaine as they claimed, there would be more express language in Elaine's Trust to provide for them if he and William left no issue. Instead, David maintained, Elaine's Trust merely contains an "Armageddon clause" referencing "heirs at law," which does not provide a sufficient basis for the Cooks to frustrate Elaine's primary intent to benefit her sons. Finally, David included a declaration from Carol Short, Elaine's sister-in-law through Clarence, stating that she was in frequent contact with Elaine and Clarence, she had never heard of the Cooks, Elaine had never mentioned the Cooks, and she believed Elaine's intent was to provide financial support to David after her death.

The probate court held a hearing on FHB's petition, with counsel for FHB, David, and the Cooks present.[10] The minutes of the hearing indicate that the court found "there is an ambiguity" and would "focus on the settlor's intent."[11] In its Order Granting Petition for Instructions Regarding Distributions and Termination, and for Modification of Trust (Order), the court granted FHB's petition, modifying Elaine's Trust to provide for discretionary payments of principal to David and terminating his subtrust under Amended Article V.B.(a) and (b) at his death. The probate court's order contained no findings of fact as to whether Elaine's Trust contained an ambiguity regarding the distribution of principal, whether extrinsic evidence was considered in the court's determinations, and if so, the evidence that was considered and the evidentiary standard used to review the evidence.

The court also concluded FHB was not required to provide financial information to the Cooks. The court instructed the parties to provide a termination date for Elaine's Trust and ordered that the attorneys' fees for all parties involved in the proceedings be paid from the principal

---

[10] The Honorable Derrick H.M. Chan presided.

[11] Although the Cooks requested a transcript of the hearing, it was not included in the record on appeal.

14

of Elaine's Trust. The probate court entered its judgment on December 16, 2015 (judgment), from which both the Cooks and David appealed to the ICA.

### C. ICA Proceedings

The Cooks asserted that the probate court erred in modifying Amended Article V.B.(a) of Elaine's Trust and in refusing their request for information related to Elaine's Trust and David's finances. David and FHB both filed answering briefs opposing the Cooks' contentions. David also filed a cross-appeal, arguing that the probate court abused its discretion in allowing the Cooks' attorneys' fees and costs to be paid from the principal of Elaine's Trust.

In its memorandum opinion, the ICA first addressed whether the plain language of Amended Article V.B.(a) unambiguously demonstrated Elaine's intent to allow discretionary payments of principal to David.[12] The ICA noted that this provision does not instruct the trustee on principal distributions and that Elaine's Trust did not demonstrate Elaine's intent to preserve the principal for the Cooks or to limit David to income solely.

---

[12] The ICA's memorandum opinion can be found at In re Elaine Emma Short Revocable Living Tr. Agreement, No. CAAP-15-0000960, 2019 WL 2417367 (Haw. App. June 10, 2019) (mem.).

15

The ICA determined that "Elaine's primary intent appears to be to provide for her children."  By contrast, stated the ICA, the Cooks' claim to their interest arises only "through a default provision."  The ICA surmised that the language permitting the trustee to withhold income was likely added in response to William's drug-related disability.  The ICA also determined that, regardless of Elaine's primary intent, there were no provisions in Elaine's Trust limiting or prohibiting the trustee's ability to distribute principal.

Thus, the ICA concluded that an ambiguity arose as to the distribution of principal under Amended Article V.B.(a), and it accordingly reviewed extrinsic evidence to aid in its construction of this provision.  The ICA noted that Carol Short's declaration stated that she was frequently in contact with Elaine, Elaine never mentioned the Cooks, and she had "no doubt" Elaine would want to provide complete financial support to David.  Referencing David's affidavit, the ICA stated that David also did not believe that Elaine had contact with the Cooks, and that Elaine "intended for her children and their issue to be the primary beneficiaries of [Elaine's] Trust."  Further, the ICA concluded that the 1979 Will likely reflected Elaine's intent to provide the principal to David, to the exclusion of the Cooks, because the 1979 Will made no mention of "heirs at law."  The ICA then considered the Cooks' statements,

16

the numerous photographs, as well as Susan's declaration, but the ICA found this evidence insufficient to show that Elaine intended the Cooks to receive the principal, stating, "we are unpersuaded." Finally, the ICA dismissed the Cooks' assertion that Elaine did not have a close relationship with David, opining that the fact that David could not be found when Elaine needed a guardian appointed merely shows that "the identity and whereabouts of Elaine's adult children [was] unknown." This circumstance, the ICA stated, "does not, in our view, establish that Elaine intended now to provide for her heirs-at-law."

The ICA thus held that the extrinsic evidence supported the conclusion that Elaine intended first and foremost to provide for her sons and their respective issue. Accordingly, the ICA concluded that the probate court had not erred in modifying Amended Article V.B.(a) to allow discretionary distribution of the principal to David.

The ICA also rejected the Cooks' argument that HRS § 560:7-303 superseded Article XIV of Elaine's Trust, which provides that FHB need only give accounts information to beneficiaries then entitled to principal and income. The ICA held that a trust can alter how much information is given to a beneficiary and may limit accounts information, even if that information is required by statute, so long as the statute does

17

not prohibit such alteration.[13]   HRS § 560:7-303 does not prohibit FHB from providing accounts information to current beneficiaries only, the ICA concluded, allowing Elaine's Trust to exclude contingent beneficiaries like the Cooks.  Therefore, the ICA determined that the probate court did not err when it rejected the Cooks' contention that they were statutorily entitled to (1) a listing of Elaine's Trust assets at the time of Elaine's death in 2012; (2) a statement of accounts for Elaine's Trust in the years 2012, 2013, and 2014; (3) a statement of the income distributions made to David from Elaine's Trust for 2012, 2013, and 2014; and (4) financial information relating to Clarence's Trust.

Lastly, the ICA found that the probate court abused its discretion when it awarded the Cooks attorneys' fees from Elaine's Trust's principal.  The ICA thus affirmed the probate court's Order and judgment in all respects except as to the grant of the Cooks' attorneys' fees and costs, which was reversed.

In their application for writ of certiorari, the Cooks contend that the ICA gravely erred in the following: (1) after finding an ambiguity in the trust, weighing conflicting evidence

_____

[13]   The ICA cited Restatement (Third) of Trusts § 82 cmt. a(2) and § 83 cmt. d (Am. Law Inst. 2007) for this proposition.

to determine Elaine's intent and ignoring other evidence to resolve the ambiguity without holding a hearing as required for contested matters under Hawai'i Probate Rules (HPR) Rules 19 and 20;[14] (2) affirming the probate court's decision to deny the Cooks any financial information regarding Elaine's Trust despite the trustee's statutory duty to produce this information;[15] and (3) determining that the probate court abused its discretion in awarding attorneys' fees and costs to the Cooks.

## II. STANDARDS OF REVIEW

### A. Construction of a Trust

"The construction of a trust is a question of law which this court reviews de novo."  In re Medeiros Testamentary Tr. and Life Ins. Tr., 105 Hawai'i 284, 288, 96 P.3d 1098, 1102 (2004).

### B. Statutory Interpretation

Statutory interpretation is a question of law reviewable de novo.  Stout v. Bd. of Trs. of the Emps. Ret. Sys., 140 Hawai'i 177, 185, 398 P.3d 766, 774 (2017).

---

[14]     The Cooks do not challenge the ICA's determination that an ambiguity exists as to the distribution of principal under Amended Article V.B.(a).

[15]     The Cooks in their certiorari application do not challenge the ICA's holding that they were not entitled to information regarding Clarence's Trust, and this issue is thus not addressed.

## III. DISCUSSION

**A.    The ICA Erred by Weighing the Credibility of the Extrinsic Evidence on Appeal Instead of Remanding the Case to the Probate Court.**

### 1. The Lack of Findings Requires Remanding the Case to the Probate Court.

The probate court's written Order in this case allowed FHB to modify Elaine's Trust to provide for the distribution of principal to David.  The Order, however, contained no findings of fact as to whether Amended Article V.B.(a) was ambiguous.  According to the minutes of the hearing on FHB's petition, the probate court orally stated that it found an ambiguity and "focus[ed] on Settlor's intent."  But it is unclear on what basis the probate court found an ambiguity, or if such ambiguity formed the basis for the court's determination.[16]  Even assuming the probate court found an ambiguity, it is also unclear whether the probate court considered Elaine's intent to be clear from

_____

[16]    The probate court's Order contains no findings of fact or conclusions of law regarding ambiguity.  While the ICA's memorandum opinion addressed the specific issue raised by the Cooks of whether Amended Article V.B.(a) was ambiguous, a probate court may modify a trust in other situations, for example, when unforeseen or emergency circumstances require modification of a clause.  See Restatement (Third) of Trusts § 66 (Am. Law Inst. 2003) (permitting modification of an administrative or distributive provision of a trust because of unanticipated circumstances or in order to further the purposes of the trust); see also Hawaiian Tr. Co. v. Breault, 42 Haw. 268, 271 (Haw. Terr. 1958) (permitting deviation from the terms of the trust when emergencies occur or unusual circumstances arise).  In fact, FHB argued in its petition and its answering brief to the ICA that Amended Article V.B.(a) was ambiguous and that there were unforeseen circumstances necessitating a change.  Thus, it is unclear what considerations formed the basis of the probate court's decision to grant FHB's petition to modify Elaine's Trust.

other provisions in Elaine's Trust or whether the court relied on extrinsic evidence in determining Elaine's intent. If the probate court did rely on extrinsic evidence, it is unclear what evidence it found persuasive, and there is also no indication as to what evidentiary standard it used in weighing the evidence. In short, the probate court did not articulate the factual basis of its ruling.

The ICA, after concluding that Amended Article V.B.(a) was ambiguous, proceeded to evaluate extrinsic evidence offered by the parties to the probate court. It determined that Carol Short's Declaration, David's Affidavit, and the 1979 Will were credible and persuasive evidence of Elaine's intent, stating that it was "unpersuaded" by the Declaration of Susan, the numerous photographs, and the petition for appointment of a guardian. Thus, based on the evidence it considered to be credible or deserving of weight, the ICA held that the probate court did not err in granting FHB's petition.

However, when the lower court has failed to issue the requisite findings of fact to enable meaningful appellate review, it is not the function of the appellate court to conduct its own evidentiary analysis. See Goo v. Arakawa, 132 Hawai'i 304, 317, 321 P.3d 655, 668 (2014) (holding that a fact-intensive inquiry is best handled by a trial court, not an appellate court, especially when the record is incomplete or

21

non-existent); Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 383-84 (2008) (holding that the Court of Appeals should remand to the District Court instead of engaging in its own evidentiary analysis). After concluding that Amended Article V.B.(a) was ambiguous, the ICA should not have conducted its own analysis of the evidence by weighing its credibility. Instead, the ICA should have remanded the case to the probate court so that it could identify the facts it found to be in support of the modification. See Graham v. Wash. Univ., 58 Haw. 370, 375, 569 P.2d 896, 900 (1977) (remanding a trust dispute to the trial court for consideration of extrinsic evidence to determine the settlor's intent after concluding that the extrinsic evidence was improperly excluded by the trial court).[17] The ICA's failure to remand the case to the probate court contravened the basic and well-settled principle that fact-finding should be left to a fact-finder. Pullman-Standard v. Swint, 456 U.S. 273, 291-92 (1982) ("[F]actfinding is the basic responsibility of district courts, rather than appellate courts, and . . . the Court of Appeals should not have resolved in the first instance this

_____

[17] FHB argues that Graham is inapposite because it was not adjudicated under the court rules that govern probate court proceedings, i.e., HPR Rules 19 and 20. However, the principle that the trial court should consider, in the first instance, extrinsic evidence when resolving an ambiguity applies without regard to the procedural rules governing the proceeding. Indeed, the Graham court's holding was based on the trial court's erroneous application of the parole evidence rule and did not reference any rules of procedure.

factual dispute which had not been considered by the District Court." (alterations in original)); see also Gussin v. Gussin, 73 Haw. 470, 489, 836 P.2d 484, 494 (1992) (holding that remand was required because the family court did not make any findings as to donative intent or any other element bearing on whether a legal gift had been made); Herrmann v. Herrmann, 138 Hawai'i 144, 155-56, 378 P.3d 860, 871-72 (2016) (holding that ICA erred in not remanding for further fact-finding where the family court did not make a finding as to prejudice regarding an estoppel argument).

Furthermore, "[t]his court has repeatedly stated that cases will be remanded when the factual basis of the lower court's ruling cannot be determined from the record." State v. Visintin, 143 Hawai'i 143, 157, 426 P.3d 367, 381 (2018) (internal quotation marks omitted). This rule has been applied whenever the trial court fails to make findings of fact that are necessary for the court's ruling. State v. Hutch, 75 Haw. 307, 331, 861 P.2d 11, 23 (1993) ("Because findings of fact are imperative for an adequate judicial review of a lower court's conclusions of law, we have held that cases will be remanded when the factual basis of the lower court's ruling cannot be determined from the record." (alterations and internal quotation marks omitted) (quoting State v. Anderson, 67 Haw. 513, 514, 693 P.2d 1029, 1030 (1985))); Anderson, 67 Haw. at 514, 693 P.2d at

23

1030 (remanding after determining that the lower court granted the motion to suppress without having made any findings of fact). Accordingly, when a trial court has failed to issue findings of fact and the appellate court is unable to discern the factual basis of the lower court's ruling, we have held that the case should be remanded to permit the lower court or agency to make the requisite findings. Visintin, 143 Hawai'i at 157, 426 P.3d at 381; see also Gordon v. Gordon, 135 Hawai'i 340, 351, 350 P.3d 1008, 1019 (2015) (remanding to the trial court when the record was so deficient as to prohibit "meaningful appellate review").

The Chief Justice's Concurring and Dissenting Opinion (minority) contends that our opinion "ignores" the well-settled rule that, "Where the [lower] court's decision is correct, its conclusion will not be disturbed on the ground that it gave the wrong reason for its ruling." Minority at 9 (alteration in original) (quoting Poe v. Hawai'i Labor Rels. Bd., 87 Hawai'i 191, 197, 953 P.2d 569, 575 (1998)). However, in this case the probate court gave no reason for its ruling, and it is not clear that this rule is intended to apply when the lower court decides a case without providing any reasoning at all. The Poe opinion cited directly to two cases in support of this rule. The first case was Reyes v. Kuboyama, in which this court vacated the lower court's ruling granting summary judgment and recognized

that the defendant owed a duty to plaintiff not to sell liquor to a minor in violation of the law.  76 Hawai'i 137, 139, 870 P.2d 1281, 1283 (1994).  Poe also cited to Enos v. Pacific Transfer & Warehouse, Inc., in which this court stated that

> in order to facilitate a meaningful and more efficient appellate review, an order imposing sanctions should set forth findings that describe, with reasonable specificity, the perceived misconduct (such as harassment or bad faith conduct), as well as the appropriate sanctioning authority[.]

79 Hawai'i 452, 459, 903 P.2d 1273, 1280 (1995) (emphasis added). We do not interpret Poe as permitting an appellate court to scour the evidentiary record of a case for any factual basis in the record to support a trial court's decision.  Such a rule would require the appellate court to affirm a lower court's decision despite overwhelming evidence in the record to the contrary or affirm a ruling that resulted from the trial court's misapprehension of the determinative facts or the applicable law.  Moreover, it would also allow the exact situation that occurred in this case: permitting an appellate court to affirm a trial court's decision based on credibility determinations that were never made by a trial court.[18]

---

[18]     The minority contends that we should affirm the probate court based upon any ground in the record because the court found that Elaine intended for David to receive distributions of principal.  Minority at 8. The probate court made no such finding.  We disagree that the record impliedly establishes the court made this finding as there are no findings whatsoever as to Elaine's intent or with regard to the extrinsic evidence. Additionally, it is unclear whether the probate court's ruling was based on a finding that Elaine intended for David to receive distributions of the

(continued . . .)

Without findings of fact to review, the ICA was unable to determine if the probate court's modification was based on clearly erroneous findings. The absence of findings therefore precluded the ICA from being able to conduct appropriate appellate review. And this court is similarly not able to meaningfully review the probate court's Order in this case. The ICA thus erred in affirming the probate court's Order and judgment instead of remanding the case to the probate court with instructions to render findings of fact.[19]

_____

(. . . continued)

principal or whether it found there were unforeseen or emergency circumstances that required a modification of Elaine's Trust so that its purposes would not be frustrated. See supra note 16. The minutes of the court hearing could have referred to a focus on Elaine's intent as to the purpose or purposes of the trust or her intent for David to receive distributions of the principal. Since the record is susceptible to multiple possible bases for the probate court's ruling, and since the court did not identify the facts upon which it relied, we are unable to affirm the probate court's ruling, let alone on a separate basis. Cf. Reyes, 76 Hawai'i at 140, 870 P.2d at 1284. The minority contends that the purpose of Elaine's Trust and an intention for David to receive principal distributions are "one and the same." Minority at 8-9 n.5. However, this assumes that the purpose of the trust had to coincide with Elaine's intent as to whether David would receive a distribution of principal, which may or may not have been the case.

[19] The minority argues that the lack of a transcript of the hearing on the petition, as required by Hawai'i Rules of Appellate Procedure (HRAP) Rule 10(b)(3), is more significant to this appeal than the lack of findings. Minority at 2-3. HRAP Rule 10(b)(3) (2012) provides that "[i]f the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion." (Emphases added.) The minutes indicate that only the arguments of counsel were presented at the hearing on the petition and do not show that any evidence in the form of testimony, documents, or tangible objects was adduced; under the circumstances of this case, the inclusion of the hearing transcript would not aid us in our resolution of this case.

## 2. The Probate Rules Do Not Supersede the Settled Principle That An Appellate Court Will Remand a Case to the Lower Court When It Has Not Entered Findings Sufficient to Permit Meaningful Review of the Decision.

The minority contends that our well-established case law requiring that a case be remanded when the lower court has failed to issue requisite findings of fact does not apply to the probate court.  Minority at 7.  Specifically, the minority argues that the probate rules permit the probate court to dispose of contested cases without entering written findings.  Minority at 7-8.  Accordingly, the minority contends that if the probate court declines to make findings, as it is permitted to do under the probate rules, the appellate court is empowered to examine and weigh the extrinsic evidence in the record as the ICA did in this case.  Minority at 8.

First, as discussed, it is not the function of the appellate court to conduct its own evidentiary analysis in a case on appeal.  See Goo v. Arakawa, 132 Hawai'i 304, 317, 321 P.3d 655, 668 (2014).  Determining contested facts is for the trial courts, not courts of appeal.  Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 383-84 (2008).  Whether the probate court rules expressly require findings or whether the probate

court declines to make findings does not redefine an appellate court's reviewing authority.[20]

The minority's analysis is also negated by the structure of the Hawai'i Probate rules.  HPR Rule 20 (2010) provides that when a case is contested the probate court must, through a written order, either assign the case to the circuit court or retain it.[21]  HPR Rule 20(a).[22]  If the probate court assigns the case to the circuit court, "[t]he Hawai'i Rules of

_____

[20]    The minority appears to contend that the Cooks have waived any challenge to the ICA conducting its own analysis of the extrinsic evidence and weighing its credibility.  Minority at 3-5.  However, the Cooks challenged the ICA's improper weighing of the extrinsic evidence at the earliest possible time that such a challenge could have been raised--in their application for a writ of certiorari--because the probate court had not referenced any extrinsic evidence in its Order. Thus, the nature of such reliance, if any, could not have previously been discerned.  Accordingly, the issue is not waived.
        The minority also suggests that the ICA's consideration and weighing of extrinsic evidence was appropriate because "[p]etitioners invited it to do so."  Minority at 10.  It is incorrect to assert that the Cooks "invited" the ICA to weigh the extrinsic evidence.  The Cooks specifically argued that consideration of the extrinsic evidence would be improper under Hawai'i law, but, in the event that the ICA was inclined to consider it, the Cooks argued that the extrinsic evidence supported their contention that Elaine did not intend for David to receive distributions of principal.  Moreover, a party's argument as to the credibility or weight of extrinsic evidence simply does not negate the well-settled rule that an appellate court should remand a case to the lower court when the absence of findings prevents meaningful appellate review.  Gussin, 73 Haw. at 489, 836 P.2d at 494.

[21]    The Cooks filed an objection to FHB's petition challenging FHB's contention that Elaine's Trust was ambiguous as to the distribution of the principal or, in the alternative, arguing that the ambiguity should be resolved in their favor.  The opposed petition therefore became a contested matter.  HPR Rule 19 ("A contested matter is any one in which an objection has been filed.").

[22]    HPR Rule 20(a) provides as follows:

        The court by written order may retain a contested matter on the regular probate calendar or may assign the contested matter to the civil trials calendar of the circuit court.

Civil Procedure [(HRCP)] and the Rules of the Circuit Courts will apply to all contested matters assigned to the civil trials calendar." HPR Rule 20(c).[23] Crucially, HRCP Rule 52 (2000) provides that "[i]n all actions tried upon the facts without a jury . . . the court <u>shall find the facts specially</u>." HRCP Rule 52(a) (emphasis added).[24] Thus, under HPR Rule 20(c), the circuit court would make findings of fact on the contested

---

[23]     HPR Rule 20(c) provides as follows:

The Hawai'i Rules of Civil Procedure and the Rules of the Circuit Courts will apply to all contested matters assigned to the civil trials calendar. However, no right to jury trial shall be created by assignment to the civil trials calendar where such a right does not exist in the underlying proceeding. Unless otherwise ordered by the court, when a matter is assigned to the civil trials calendar, then for all procedural purposes, the party objecting to the petition shall be considered the plaintiff, the objection is to be treated as a complaint, and the complaint shall be deemed to have been filed on the date of the assignment to the civil trials calendar.

[24]     HRCP Rule 52 provides in pertinent part as follows:

(a) Effect. In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in subdivisions (b) and (c) of this rule.

matter under HRCP Rule 52.  Alternatively, if the probate court retains the case, the probate court "in the order of assignment may, at the request of the parties, designate and order that any one or more of the Hawai'i Rules of Civil Procedure and/or the Rules of the Circuit Courts shall be applicable in such matter." HPR Rule 20(d).[25]  Although the probate court is not obligated to adopt any and all rules that the parties request, it must exercise its discretion to do so "with regard to what is right and equitable under the circumstances and the law."  Booker v. Midpac Lumber Co., 65 Haw. 166, 172, 649 P.2d 376, 380 (1982) (quoting Langnes v. Green, 282 U.S. 531, 541 (1931)).

Thus, in order for a contested case to be resolved without findings of fact, the parties would have to agree to allow the probate court to resolve their contested matter without explaining its reasons for its decision, or alternatively, the probate court would have to refuse a party's request to adopt a rule requiring the court to make findings in its ruling.  In a contested case, particularly where the outcome may depend on factual determinations about the credibility of

---

[25]     HPR Rule 20(d) provides as follows:

> Whenever the court retains jurisdiction of a contested matter as a probate proceeding, the court in the order of assignment may, at the request of the parties, designate and order that any one or more of the Hawai'i Rules of Civil Procedure and/or the Rules of the Circuit Courts shall be applicable in such matter.

extrinsic evidence, such a refusal would likely be inequitable and an abuse of discretion. Additionally, a contested case that is adjudicated without findings of fact may occur when the probate rules are not followed.

Here the case was clearly contested, yet the probate court did not issue an order retaining the case in contravention of HPR Rule 20(a). Thus, the parties were not provided an opportunity under HPR Rule 20(d) to request that the probate court adopt HRCP Rule 52 and render findings of fact at the time an order of retention should have been issued. Additionally, the record does not contain any other order indicating that the probate court intended to decide the case without findings, nor does the record contain a waiver from any of the parties of their right to request findings as a result of the probate court's retention of the case.[26]

---

[26]     The minority contends that the "parties must request that specific rules apply before the probate court issues a retention order." Minority at 7 n.4. The minority inverts the process. As the commentary to HPR Rule 20(a) explains, "By requiring a written order of assignment . . . a clear record is created, and the court then has the opportunity to decide what procedures will be used if the contested matter is retained. (See [HPR] Rule [20](d). . . ." HPR Rule 20(a) cmt. (emphasis added).

    Similarly, this court has observed in a probate proceeding where no retention order was entered that "[t]he prerequisites of HPR Rule 20(d) apparently were not satisfied in this case in that there is no order of assignment in which the court 'may, at the request of the parties designate and order that any one or more of the Hawai'i Rules of Civil Procedure and/or the Rules of the Circuit Courts shall be applicable in such matter.'" In re Estate of Campbell, 106 Hawaii 453, 460 n.16, 106 P.3d 1096, 1103 n.16 (2005) (emphasis added) (citing HPR Rule 20(d)). As in Campbell, because an order of retention was never issued by the probate court in this case, the parties were not properly afforded the opportunity to request the procedures that

(continued . . .)

31

This court has repeatedly emphasized the critical importance of factual findings and the many reasons they should be made when possible. First, findings of fact "facilitate a meaningful and more efficient appellate review." Bank of Hawaii v. Kunimoto, 91 Hawai'i 372, 390, 984 P.2d 1198, 1216 (1999). Adequate findings are crucial to meaningful appellate review because it allows the appellate court to ascertain the trial court's reasoning and determine whether it was consistent with applicable law. Enos, 79 Hawai'i at 459, 903 P.2d at 1280 (stating that an order imposing sanctions should describe with reasonable specificity the perceived misconduct and the appropriate sanctioning authority to facilitate meaningful and efficient appellate review).

Second, findings "assure both the litigants and the court that the decision . . . was the result of reasoned consideration." Trs. of Estate of Bishop v. Au, No. SCWC-16-0000235, at 28, 2020 WL 1150157, at *9-10 (Haw. Mar. 10, 2020) (citing Enos, 79 Hawai'i at 459, 903 P.2d at 1280). By specifically articulating its findings, the trial court is encouraged to take care in determining the facts in dispute.

---

(. . . continued)

would be employed by the court, as specifically provided by HPR Rule 20(d), and no such procedures were ever established in a written order.

Richards v. Kailua Auto Mach. Serv., 10 Haw. App. 613, 620-21, 880 P.2d 1233, 1237 (1994) ("[T]he requirement that findings of fact be made is intended to evoke care on the part of the trial judge in ascertaining the facts." (citing 9 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2571, at 679-80 (1971))).

Third, without findings of fact, the appellate court is compelled to review the entire record to identify clear error, expending valuable time and effort that could easily be avoided through the making of findings, which is a proportionally less burdensome task on the lower court. Similarly, the lack of findings of fact impairs a litigant's ability to meaningfully advocate on appeal because the litigant must speculate as to the basis for the trial court's rulings. See Mackler v. Bd. of Educ., 108 A.2d 854, 858 (N.J. 1954) (stating that there are practical reasons for making findings of fact, including, to help parties plan their cases for rehearing and for judicial review). Findings of fact relieve both the parties and the appellate courts from the unnecessary burden of exhaustively combing the record in an attempt to find any fact that could hypothetically justify the lower court's decision.

Based on these reasons, we have held that findings are necessary or strongly encouraged in a variety of proceedings, even when they are not required by rule or statute. Enos, 79

Hawai'i at 459, 903 P.2d at 1280 (stating that a court should make findings when ordering sanctions); Au, No. SCWC-16-0000235, at 29 ("[W]e hold that a court imposing a vexatious litigant order under HRS chapter 634J is required to make findings[.]"). This court has also required findings for orders granting sanctions for discovery violations or failing to review a court rule, and we have made findings a near requirement when a trial court grants an involuntary dismissal of a complaint with prejudice. Fujimoto v. Au, 95 Hawai'i 116, 153, 19 P.3d 699, 736 (2001) (holding that the circuit court's sanctioning of the plaintiffs for failure to review a court rule before filing the complaint was an abuse of discretion "[a]bsent a particularized finding of bad faith"); Kawamata Farms, Inc. v. United Agri Prods., 86 Hawai'i 214, 258, 948 P.2d 1055, 1099 (1997) (affirming the circuit court's award of sanctions for abusive litigation practices because the sanction was adequately supported by an express finding of bad faith); In re Blaisdell, 125 Hawai'i 44, 49, 252 P.3d 63, 68 (2011) (stating that before dismissing a case with prejudice, "the careful exercise of judicial discretion requires that a [trial] court consider less severe sanctions and explain, where not obvious, their inadequacy for promoting the interests of justice." (alteration in original) (emphasis omitted) (quoting Schilling v. Walworth Cty. Park & Planning Comm'n, 805 F.2d 272, 275 (7th Cir.

1986))).  Nonetheless, the minority asserts that probate courts are uniquely empowered to dispose of contested matters without articulating the factual basis of their dispositions.  Minority at 7-8.

The minority relies on a combination of the canons of interpretation known as in pari materia and expressio unius est exclusio alterius to conclude that the absence of an express requirement that findings be made in the probate rules and its presence in the HRCP and the Hawai'i Family Court Rules evidences a specific intent to except probate courts from any requirement that findings of fact be made in contested matters.  Minority at 7-8.  First, the structure of the probate court rules, in automatically implementing the HRCP when a contested case is assigned to the circuit court and allowing the parties to request that findings be made when a probate court retains the contested case, essentially renders it unnecessary for the probate rules to have an express mandate that the probate court render findings of fact in contested cases.  As stated, a probate court would likely abuse its discretion in not rendering findings when requested by a party in a contested case,

particularly when the disposition turns on the credibility of extrinsic evidence, which is an inherently factual inquiry.[27]

Additionally, the canon of in pari materia is only applicable if the statutes or rules being compared relate to the same subject matter, which is not the case here. Int'l Sav. & Loan Ass'n, Ltd. v. Wiig, 82 Hawai'i 197, 200, 921 P.2d 117, 120 (1996) (stating that statutes concerning the same subject matter should be construed with reference to each other); State v. Mata, 71 Haw. 319, 330, 789 P.2d 1122, 1128 (1990) ("HRS Chapter 281 regulates the sale of liquor and liquor establishments. HRS Chapter 291 regulates traffic violations. The chapters serve different purposes and are not in pari materia."). Here, the probate rules, family court rules, and the rules of civil procedure do not relate to the same subject matter.

Further, this court has stated that these canons serve "only as an aid" to interpretation and "[t]he inclusion of a specific matter in a statute implies the exclusion of another 'only where in the natural association of ideas the contrast between a specific subject matter which is expressed and one which is not mentioned leads to an inference that the latter was

_____

[27] The minority incorrectly asserts that we conclude that the structure of the probate rules "always" requires findings of facts, making a specific rule unnecessary in this case. Minority at 7 n.4. We do not make this conclusion. Instead, we conclude that the failure of the probate court to make findings in a dispositive ruling may require an appellate court to remand the case for the rendering of findings to permit a meaningful review of the probate court's decision.

not intended to be included <u>within the statute</u>.'" <u>Wiig</u>, 82 Hawai'i at 201, 921 P.2d at 121 (emphases added) (quoting 82 C.J.S. <u>Statutes</u> § 333, at 670 (1953)).  Here, the differences between the probate rules, the rules of civil procedure, and the family court rules do not naturally lead to the inference that probate courts are specially excepted from having to make findings of fact in contested matters.  This is particularly true because when the probate court assigns the case to the civil trial calendar, the HRCP apply, and when the probate court retains the case, the parties are given the right to request findings, thus essentially providing the parties with the means to obtain the underlying basis for the court's ruling pursuant to HPR Rule 20(a), (c), and (d) and HRCP Rule 52.  This further militates against any inference of a specific intent to specially except the probate courts from making findings in contested cases that depend on factual determinations, as any such intent is negated by the structure of the rules themselves. Hence, when acting in accordance with the Hawai'i Probate Rules, a probate court should make findings of fact in a contested case such as this, even though there is not an explicit requirement to do so, except when the court's refusal may be justified as a

sound exercise of its discretion or when the parties agree to a resolution without an articulation of its basis.[28]

Thus, while the probate rules do not specifically require findings in all contested cases retained by the probate court, their omission in a dispositional ruling may require an appellate court to remand the case for the making of findings to enable the appellate court to meaningfully review the probate court's decision. In this case, the complete absence of findings by the probate court precludes us from being able to determine which facts the court relied upon and which underlay the court's modification of Elaine's Trust. Without this information, we are unable to determine if the probate court's modification was based on clearly erroneous findings or whether alternative grounds would support affirmance.[29] See Visintin, 143 Hawai'i at 157, 426 P.3d at 381; Wong v. Cayetano, 111

---

[28] The minority contends that the instant case is an example of when a probate court is permitted to dispose of a contested matter without making findings. Minority at 7 n.4. However, the probate court in this case did not comply with the probate rules when it failed to issue an order retaining the case and, because there was no order of assignment, failed to specifically afford the parties the ability to request that the Hawai'i Rules of Civil Procedure and/or the Rules of the Circuit Courts be applicable in the contested matter. This failure does not provide a legal basis to excuse the probate court from having to make findings of fact that are sufficient to enable the appellate court to meaningfully review the probate court's decision.

[29] The minority also contends that the issue of the probate court's failure to make findings was "not preserved for review." Minority at 5. We do not consider whether the probate court's decision not to enter findings was erroneous. Contra Minority at 5. We hold only that under the circumstances of this case, the lack of findings precludes us from conducting meaningful appellate review.

Hawai'i 462, 479, 143 P.3d 1, 18 (2006). Accordingly, we are unable to conduct an appropriate appellate review and must remand the case to the probate court.[30]

### B. The Cooks Are Entitled to Accounts Information from the Trustee of Elaine's Trust.

When construing a testamentary trust, this court is guided by principles relating to the interpretation of trusts as well as those relating to the interpretation of wills. Tr. Created Under the Will of Damon (Trust of Damon I), 76 Hawai'i 120, 124, 869 P.2d 1339, 1343 (1994). "A fundamental rule when construing trusts is that the intention of the settlor as expressed in a trust instrument shall prevail unless inconsistent with some positive rule of law." In re Lock Revocable Living Tr. (In re Lock), 109 Hawai'i 146, 151-52, 123 P.3d 1241, 1246-47 (2005) (quoting Trust of Damon I, 76 Hawai'i at 124, 869 P.2d at 1343); In re Robinson Tr., 110 Hawai'i 181, 184, 130 P.3d 1046, 1049 (2006). Positive law "typically consists of enacted law--the codes, statutes, and regulations

---

[30]    Because the probate court judge who initially presided over this case is unavailable to enter findings of fact, we vacate that portion of the ICA's judgment affirming the probate court's Order modifying Elaine's Trust to distribute principal to David and remand the case to the probate court for further proceedings consistent with this opinion. Cf. Hana Ranch, Inc. v. Kanakaole, 66 Haw. 643, 649-650, 672 P.2d 550, 554 (1983) (noting that under HRCP Rule 63, "a successor trial judge cannot enter findings of fact and conclusions of law in a case which was tried before his predecessor.").

that are applied and enforced in courts." Positive Law, Black's Law Dictionary (11th ed. 2019).[31]

Here, Article XIV of Elaine's Trust provides that the trustee "shall deliver regular accounts to . . . all adult beneficiaries then entitled to receive income or principal of the trust estate." (emphasis added). Elaine's intention as expressed in Article XIV was to limit who received "regular accounts" to "then entitled" beneficiaries. See In re Lock, 109 Hawai'i at 151-52, 123 P.3d at 1246-47. Under Elaine's Trust, David is the only beneficiary "then entitled" to receive regular accounts. The Cooks, by their own admission, are contingent beneficiary remainders. See In re Estate of Campbell, 46 Haw. 475, 483 n.6, 382 P.2d 920, 943 n.6 (1963) ("In this opinion the term 'contingent beneficiaries' is used to describe those who are not presently income takers but who may become income takers and may also share in the distribution of the corpus upon the termination of the trust[.]"). Thus, under the terms of Elaine's Trust, the Cooks are not now entitled to accounts information. This provision prevails unless there is positive law that overrides Elaine's intent. In re Lock, 109 Hawai'i at 151-52, 123 P.3d at 1246-47.

---

[31]     For the purposes of this opinion, "positive rule of law" is considered to be synonymous with "positive law," as defined by Black's Law Dictionary.

When construing statutes, "the fundamental starting point for statutory interpretation is the language of the statute itself." Stout v. Bd. of Trs. of the Emps. Ret. Sys., 140 Hawai'i 177, 185, 398 P.3d 766, 774 (2017) (quoting Citizens Against Reckless Dev. v. Zoning Bd. of Appeals, 114 Hawai'i 184, 193, 159 P.3d 143, 152 (2007)). HRS § 560:7-303 requires a trustee to "keep the beneficiaries of the trust reasonably informed of the trust and its administration." Hawai'i law is clear that a trust beneficiary is any person with a "future interest, vested or contingent." HRS § 560:1-201 (2006) (emphasis added).[32] This court has previously held that HRS § 560:7-303 imposes three separate duties on the trustee. Trust Created Under the Will of Damon (Trust of Damon II), 140 Hawai'i 56, 65, 398 P.3d 645, 654 (2017). "The first is an affirmative duty to 'keep the beneficiaries . . . reasonably informed of the trust and its administration.' The second and third duties set forth in parts (2) and (3), respectively, spring to life 'upon reasonable request' of a beneficiary."[33] Id. at 65-66, 398 P.3d at 654-55 (footnote omitted). Once information is requested,

---

[32] HRS § 560:1-201 provides in pertinent part as follows:

"Beneficiary", as it relates to a trust beneficiary, includes a person who has any present or future interest, vested or contingent, and also includes the owner of an interest by assignment or other transfer[.]

[33] See note 8, supra, for HRS § 560:7-303 subsections (2) and (3).

the trustee, in lieu of providing copies of documents, has discretion to provide a "sufficient or adequate opportunity to review and inspect these requested documents." Id. at 66 n.19, 398 P.3d at 655 n.19. We have noted that "the probate court retains broad discretion to consider all the circumstances of a case," and, unless ordered by a court, a trustee need not include "sensitive personal information about other beneficiaries." Id. at 68 nn.21, 22, 398 P.3d at 657 nn.21, 22. Thus, this court has recognized that HRS § 560:7-303 imposes a duty upon a trustee to provide trust account information to beneficiaries within reasonable limitations. Following the failure of FHB to provide trust account information regarding Elaine's Trust, the Cooks, as contingent remainder beneficiaries under HRS § 560:7-303, were entitled upon request to receive such information within reasonable limits determined by the probate court.

Instead of evaluating the reasonableness of the request, the probate court in its Order determined that the statute imposed no duty on FHB to provide trust and accounts information:

> The Trustee is instructed that the Trustee is not required to provide financial information relating to the Trust, the Subtrust, and the Clarence Raymond Short Revocable Living Trust Agreement dated July 17, 1984, as amended, to the contingent remainder beneficiaries of the Trust and the Subtrust.

42

Without referencing this court's opinion in Trust of Damon II, the ICA affirmed the probate court, citing Restatement (Third) of Trusts § 82 cmts. a(2) and (d) (Am. Law Inst. 2007),[34] and it held that a trust may alter the amount of information a trustee must give to the beneficiary, even if a statute requires the providing of that information, so long as the statute does not prohibit such an alteration. In effect, under the ICA's reading, HRS § 560:7-303 can be overridden by the language of the trust document, notwithstanding the mandatory language of subsections (2) and (3) because the statute does not prohibit modification of the amount of information a trustee must give to the beneficiaries. While it is true that nothing in the language of HRS § 560:7-303 prohibits modifying the terms of a trust regarding whether a trustee must provide account

_____

[34] Commentary to Restatement (Third) of Trusts § 82 provides in relevant part:

> (a)(2) . . . . The terms of a trust may alter the amount of information a trustee must give to the beneficiaries under this Section and also the circumstances and frequency with which, and persons to whom, it must be given.
>
> . . . .
>
> (d) . . . . Disclosure is fundamental to sound administration of the trust, and to both the trustee's performance and the beneficiaries' monitoring of associated fiduciary obligations. Therefore, the trustee's duty to provide the type of information described in this Comment is subject to modification only by clear language in the terms of the trust and within limits described in Comment a(2).

information to the beneficiaries, there is similarly nothing in the statute's language that suggests providing such information is optional or non-mandatory. See Territory v. Fasi, 40 Haw. 478, 480 (Haw. Terr. 1954) (finding that the use of the verb "shall" generally indicates a mandatory provision); Kinkaid v. Bd. of Review, 106 Hawaiʻi 318, 323, 104 P.3d 905, 910 (2004) (reading "entitled" to be similar to "entitlement" which is a "[r]ight to benefits . . . which may not be abridged" (alterations in original)); see also HRS § 560:7-303. "In any event, a trust provision relieving the trustee of the duty to keep formal accounts does not abrogate the statutory duty to account to the beneficiaries in the probate court."[35] In re Childress Tr., 486 N.W.2d 141, 145 (Mich. Ct. App. 1992) (citing Raak v. Raak, 428 N.W.2d 778 (Mich. Ct. App. 1988)); see also Hollenbeck v. Hanna, 802 S.W.2d 412, 414-15 (Tex. App. 1991) (rejecting an attempt by the settlor to eliminate accounts to any trust beneficiaries in the trust document and remanding to

---

[35] The ICA cited In re McGuire Marital Trust, 660 N.W.2d 308 (Wis. Ct. App. 2003), for the proposition that contingent remainder beneficiaries were not entitled to trust and accounts information when the trust only required accounts information be given to then-entitled beneficiaries. However, McGuire is inapposite. The McGuire court specifically noted that "Wisconsin law is silent as to whether a settlor of an inter vivos trust can give one class of beneficiaries sole authority to receive and approve the trust accounting." 660 N.W.2d at 314. Hawaiʻi law is not silent regarding such matters. HRS § 560:7-703 clearly establishes that a beneficiary, including a contingent beneficiary, is entitled to request trust and accounts information. HRS § 560:7-303(2), (3).

lower court to determine the extent of accounts owed under the statute).

FHB and David also assert, and the ICA agreed, that HRS § 560:7-201(b) permits a settlor to amend a trust document to limit who can receive accounts information. See generally HRS § 560:7-201 (2006).[36] FHB argues that this statute grants a

_____

[36]   HRS § 560:7-201 provides as follows:

(a) The court has jurisdiction of proceedings initiated by trustees and interested persons concerning the internal affairs of trusts. Proceedings which may be maintained under this section are those concerning the administration and distribution of trusts, the declaration of rights and the determination of other matters involving trustees and beneficiaries of trusts. These include, but are not limited to, proceedings to:

(1) Appoint or remove a trustee;

(2) Review trustees' fees and to review and settle interim or final accounts;

(3) Ascertain beneficiaries, to determine any question arising in the administration or distribution of any trust including questions of construction of trust instruments, to instruct trustees, and to determine the existence or nonexistence of any immunity, power, privilege, duty or right; and

(4) Release registration of a trust.

(b) Neither registration of a trust nor a proceeding under this section result in continuing supervisory proceedings. The management and distribution of a trust estate, submission of accounts and reports to beneficiaries, payment of trustees' fees and other obligations of a trust, acceptance and change of trusteeship, and other aspects of the administration of a trust shall proceed expeditiously consistent with the terms of the trust, free of judicial intervention and without order, approval or other action of any court, subject to the jurisdiction of the court as invoked by interested persons or as otherwise exercised pursuant to law.

(continued . . .)

settlor broad discretion to control the administration of the trust and in effect codifies Restatement (Third) of Trusts § 82 cmt. a(2). This assertion is unmoored from the actual text of the statute. HRS § 560:7-201(b) is a jurisdictional statute that allows a trust to be administered without court supervision, while subsection (a) establishes the type of proceedings that an interested person can initiate before the court. HRS § 560:7-201(a). This statute cannot be read as a broad grant for a settlor to ignore positive law. In re Lock, 109 Hawai'i at 151-52, 123 P.3d at 1246-47.[37] And even assuming that HRS § 560:7-201(b) and HRS § 560:7-303 could be read as conflicting, a specific statute (HRS § 560:7-303) trumps a general statute (HRS § 560:7-201(b)). Richardson v. City & Cty. of Honolulu, 76 Hawai'i 46, 55, 868 P.2d 1193, 1202 (1994).

Thus, HRS § 560:7-303 is positive law that cannot be modified by the language of a trust. See In re Lock, 109 Hawai'i at 151-52, 123 P.3d at 1246-47. Accordingly, the limitation on

---

(. . . continued)

(Emphases added.)

[37] FHB cites Camara v. Agsalud, 67 Haw. 212, 215-16, 685 P.2d 794, 797 (1984), and Barnett v. State, 91 Hawai'i 20, 31, 979 P.2d 1046, 1057 (1999), for the proposition that courts must give effect to all parts of a statute and that laws on the same subject matter should be read with reference to one another. However, HRS § 560:7-201(b) merely allows a trust to be administered without court interference consistent with the settlor's intent. It does not permit the settlor to contravene Hawai'i law that is part of the same HRS chapter.

the dissemination of trust and accounts information to "then entitled beneficiaries" in Article XIV of Elaine's Trust is an impermissible infringement on HRS § 560:7-303.

The Cooks are currently contingent beneficiaries because their interest is contingent on David passing without issue. While their interest may be divested if a greater claim arises, this does not mean that the Cooks are not currently reasonably entitled to accounts information regarding Elaine's Trust as provided by HRS § 560:1-201. The exact scope of what trust and accounts information regarding Elaine's Trust they are entitled to is a determination to be made by the probate court based on a reasonable request standard. See HRS § 560:7-201 ("[S]ubmission of accounts and reports to beneficiaries . . . [is] subject to the jurisdiction of the court as invoked by interested persons or as otherwise exercised pursuant to law."); see also Trust of Damon II, 140 Hawai'i at 68, 398 P.3d at 657 (citing HRS § 560:7-303 to find a reasonable request standard).

Thus, the ICA erred in holding that the terms of Elaine's Trust can supersede HRS § 560:7-303 to limit which beneficiaries are entitled to trust and accounts information from the trustee. Further, the probate court also erred in concluding that FHB is not required to provide financial information regarding Elaine's Trust to the contingent beneficiaries.

## IV. CONCLUSION

Accordingly, the ICA's August 1, 2019 Judgment on Appeal is vacated, except as to its affirmance of the denial of account information to the Cooks from Clarence's Trust. The probate court's judgment and Order are also vacated except as to its ruling regarding providing account information from Clarence's trust. The case is remanded to the probate court for further proceedings consistent with this opinion.

Thomas E. Bush
for petitioners

Rosemarie S.J. Sam, Edmund K. Saffery, Deirdre Marie-Iha (Lynda L. Arakawa with them on the brief)
for respondent
First Hawaiian Bank

Rhonda L. Griswold, Calvert G. Chipchase, Summer G. Shelverton (Stacy K. Takekawa with them on the brief)
for respondent David Short

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

